UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVELINE GOINS

v.  CASE NO. 3:03CV 636 (JBA)

JBC & ASSOCIATES, P.C. ET AL.  March 29, 2004

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PARTIAL SUMMARY JUDGMENT

Plaintiff sued under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692e, -f, and -g, and the Connecticut Unfair Trade Practices Act (CUTPA). Plaintiff seeks statutory damages, actual damages, punitive damages, attorney's fees and costs. Summary judgment is appropriate, because whether the defendants' collection letter at issue violated the FDCPA is a question of law for the Court under the "least sophisticated consumer" standard. Schweizer v. Trans Union Corp., 136 F.3d 233, 237 38 (2d Cir. 1998), citing Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996) and Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 63 (2d Cir. 1993).

Plaintiff moves for summary judgment against each defendant as to liability alone on the following violations which are undisputed or indisputable. The defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e and §1692f, and parallel state law in at least the following respects:  Defendants drafted and sent plaintiff a collection letter dated February 17, 2003 (1) even though they were not licensed to collect as required by Connecticut law; (2) even though they knew plaintiff was represented by counsel; (3) which demanded considerably more than any possible amount of the alleged debt; (4) which threatened to sue on a time-barred debt.

Summary of Facts Appearing in Local Rule 56(a)1 Statement.

In February 2003, defendants (two out of state lawyers and their law firm) were not licensed in Connecticut to act as a consumer collection agency. Defendants knew that plaintiff was represented by counsel, since she had already sued them for their November 2001 letter demanding $1,971.80 on behalf of Wilson Suede & Leather, on underlying checks totaling $402.78 (Civil No. 3:02CV 1069 (MRK)). Yet, in February 2003, defendants sent a collection letter to plaintiff demanding some $10,000 in "restitution" for NSF checks written to Wilson Suede & Leather. Defendants' discovery revealed that the amount represented 22 checks which plaintiff purportedly wrote to five separate entities over the course of five days in 1996, totaling just under $5,000.[1]

For years, Defendants have sent collection letters to Connecticut residents on behalf of such ubiquitous entities as Toys-R-Us, Kids-R-Us, CVS, Marshalls, Linens & Things, Foot Action, Bob's Stores, KayBee Toys, and Acme Markets. Among them, defendants had been sued for collecting in Connecticut without a Consumer Collection Agency license seven times since 1998, before this suit was filed in 2003. Defendants did not apply for a Connecticut Consumer Collection Agency license until October 2002. No Connecticut license has yet been issued.

---

[1] Although plaintiff denies writing any of the checks, whether plaintiff wrote any of the checks is irrelevant to the substance of the motion for summary judgment, and to the applicability of the FDCPA. Keele v. Wexler, 149 F.3d 589, 595-96 (7th Cir. 1998) (declining to adopt a fraud exception to the FDCPA).

Defendants' sworn Connecticut licensing application states that they do business in all fifty states. Likewise, Defendants' web site proclaimed it is a Nationwide Legal Collection Firm. "You can be assured that every account placed will be handled professionally and within full compliance of all federal and state laws. Our in-house attorneys are fully responsible for ensuring compliance by the staff, associates and corresponding attorneys in all fifty states." The web site touted their "nationwide Check Recovery Program" which "offers its retail clients the opportunity to utilize the statutory civil penalties adopted for forty-four out of fifty states."

Twenty-seven states, in addition to Connecticut, require that a collection agency be licensed. Of those states, defendants are licensed in none of them. West Virginia has sought information about their collection activity despite being unlicensed. In 1998, Massachusetts forbade their collection activity absent proper licensing.

Neither Mr. Brandon (a New Jersey lawyer), nor Mr. Boyajian (a California lawyer), the only in-house attorneys at the time of this suit, have taken any responsibility to see to Connecticut licensing. In each of their depositions, they proclaimed that the other was responsible for the licensing.

Applicability of the FDCPA. Plaintiff meets the essential three requirements to establish an FDCPA violation: (1) the plaintiff is the consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the "debt" is a "debt collector" as defined, and (3) the defendant has engaged in any act or omission in violation of the prohibitions or requirements of the law.  Kolker v. Duke City Collection Agency, 750 F. Supp. 468, 469 (D.N.M. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 175-76 (W.D.N.Y. 1988); Withers v. Eveland, 988 F. Supp. 942, 945 (E.D.

Va. 1997); <u>Whatley v. Universal Collection Bureau, Inc.</u>, 525 F. Supp. 1204, 1206 (N.D.Ga. 1981).

      1. Plaintiff is a consumer.

In response to the Complaint, defendants admitted that plaintiff is a consumer.

      2.  Defendants are debt collectors.

Defendants admitted that JBC is a debt collector. Based on defendant Brandon's and Boyajian's deposition, each is a debt collector. A "debt collector" is "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Boyajian and Brandon are debt collectors under either test.

      3. Defendants have violated the FDCPA.

Defendants drafted and sent plaintiff a collection letter dated February 17, 2003 (1) even though they were not licensed to collect as required by Connecticut law; (2) even though they knew plaintiff was represented by counsel; (3) which  demanded considerably more than any possible amount of the alleged debt; (4) which threatened to sue on a time-barred debt.

As the Third Circuit stated in <u>Crossley v. Lieberman,</u> 868 F.2d 566, 570 (3d Cir. 1989):

> Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's threat of legal action than to a debt collection agency committing the same practice. A debt collection letter on an attorney's letterhead conveys authority and credibility.

I. DEFENDANTS' PERSISTENT COLLECTION OF DEBTS IN CONNECTICUT FROM CONNECTICUT RESIDENTS ON OBLIGATIONS INCURRED IN CONNECTICUT WITHOUT THE LICENSE REQUIRED BY THE CONNECTICUT CONSUMER COLLECTION AGENCY ACT VIOLATES THE FDCPA

The FDCPA generally prohibits the use of "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § §1692e. The prohibition is so significant that much of it is repeated in §1692e(10). Subsection 1692e includes a non-exhaustive list of examples of the type of representations or means which the Act prohibits. The list includes false or deceptive "implications" as well as affirmative misrepresentations. §1692e (1), (3), (4), (6), (7), (12), (13), (15), (16).

"At the outset, it should be emphasized that the use of any false, deceptive, or misleading representation in a collection letter violates § 1692e regardless of whether the representation in question violates a particular subsection of that provision." Clomon v. Jackson, 988 F.2d 1314, 1320 (2d Cir. 1993); Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996); Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them").The FDCPA is liberally construed in favor of the consumer to effectuate its purposes. Cirkot v. Diversified Financial Systems, Inc., 839 F. Supp. 941, 944 (D. Conn. 1993) (Cabranes, J.).

> Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope. See S.Rep. No. 382 at 4 (1977) ("In addition to [the] specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive

5

> collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed."), reprinted in 1977 U.S.C.C.A.N. 1695, 1698.

Hamilton v. United Health Care of Louisiana, Inc., 310 F.3d 385, 392 (5th Cir. 2002).

Case law agrees that a violation of state law is also a violation of the deceptive practices prohibition of the FDCPA. Veach v Sheeks, 316 F.3d 690, 693 (7th Cir. 2003); Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 448 (8th Cir. 2001) ("The FDCPA prohibits, inter alia, the use of debt collection practices that violate state law"). Here, defendants violated at least §1692e(5) ("action that cannot legally be taken"); §1692e(9) (misrepresentation of document's state authorization or approval), and arguably several other subsections.

A practice is deceptive if it has the tendency or capacity to deceive. FTC v. Algoma Lumber Co., 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655 (1934); Charles of the Ritz Distributors Corp. v. FTC, 143 F.2d 676, 680 (2d Cir. 1944). Omission of a material fact (that the collection agency is not licensed to collect) also constitutes misrepresentation under common law (Restatement of Torts (Second) §§ 529, 551) and deception under the Federal Trade Commission Act of 1934. Ingham v. Eastern Air Lines, Inc., 373 F.2d 227, 239 (2d Cir. 1967); Bailey Employment System, Inc. v. Hahn, 545 F. Supp. 62, 67 (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983). Such an omission of a material fact also leads to the type of "implication" repeatedly barred by the FDCPA.

Federal courts, including one in this District, have held that a collection agency that collects local debts in the forum state without a license as required by the state violates 1692e.

<u>Unlicensed activity is deceptive.</u> As long ago as 1990, Judge Daly recognized the significant right of Connecticut debtors "to have the defendant's qualifications as a collection agency reviewed by state authorities." <u>Gaetano v. Payco of Wisconsin, Inc</u>., 774 F. Supp. 1404, 1415 n. 8 (D. Conn. 1990) (unlicensed collection activity violates §1692e of the FDCPA prohibiting deceptive practices, as well as §1692f prohibiting unfair practices). <u>Gaetano</u> was cited with approval in <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1319 (2d Cir. 1993), and followed in <u>Sibley v. FirstCollect, Inc</u>., 913 F. Supp. 469 (M.D. La. 1995); <u>Russey v. Rankin</u>, 911 F. Supp. 1449, 1458-59 (D.N.M. 1995); <u>Kuhn v. Account Control Technology, Inc</u>., 865 F. Supp. 1443 (D. Nev. 1994). [It was also cited with approval by Judge Cabranes in <u>Lindbergh v. Transworld Systems, Inc.,</u> 846 F. Supp. 175 (D. Conn. 1994).] It is this body of law that the defendants have contravened.

To be sure, the Ninth Circuit rejected <u>Gaetano</u> by *fiat,* with no analysis, in <u>Wade v. Regional Credit Ass'n</u>, 87 F.3d 1098 (9th Cir. 1996). The <u>Wade</u> opinion, however, contains no analysis or rationale to explain its holding and no rule or methodology that might permit another court to adopt its conclusion. <u>Wade</u> is an anomaly where the court in any event held only that an isolated letter and call to a single debtor who owed her lawyer divorce fees, and who had moved into a state that required licensing during the course of the collection, was not a violation of the FDCPA. This conduct would not be a violation in Connecticut either, since Connecticut's licensing requirement applies only when an out of state collection agency collects "for creditors who are located within this state" or "regularly collects . . . for creditors who are located outside this state." Conn. Gen. Stat. §36a-801(a). Here, defendants have been collecting from Connecticut residents for a long time, for businesses located in Connecticut.

7

The Second Circuit recognizes the significance of the protections of Connecticut's Consumer Collection Agency Act, an analysis not undertaken in Wade. In Silver v. Woolf, 694 F.2d 8, 12 (2d Cir. 1982), the court recognized that "[D]ebt collection practices are intimately related to the use of state courts and the regulation of the practice of law in those courts. Some provisions of the Connecticut [collection agency] statute are explicitly aimed at preventing the illegal practice of law and otherwise regulate the relationship of collection agencies to Connecticut attorneys." Defendant attorneys / law firm fit squarely within the aim of the state law. Bates v. C & S Adjusters, Inc., 980 F.2d 865 (2d Cir. 1992) is also instructive. There, Judge Newman suggested that a collection agency could avoid suit in a distant venue by endorsing "Do Not Forward" on the envelope (id. at 868) and thereby showed collection agencies how to easily avoid unintentionally sending letters into a state in which they were not licensed.

Analogously, case law agrees that a violation of state law by the unauthorized practice of law is also a violation of the deceptive practices prohibition of the FDCPA. E.g., Herbert v Monterey Financial Services, Inc., 863 F. Supp. 76, 80 (D. Conn. 1994); Poirier v. Alco Collections, Inc., 107 F.3d 347 (5th Cir. 1997) (unauthorized practice of law violates §1692e(5); Martinez v. Albuquerque Collection Services, 867 F. Supp. 1495 (D.N.M. 1994) (unauthorized practice of law violates §1692e(2) and §1692f(1)).

Defendants' (lawyers and their law firm) longstanding illegal collections in Connecticut, and their failure to be licensed in any of the states in which they do business, indicates a scofflaw attitude unbecoming to attorneys, and such reckless indifference as to call for punitive damages.

<u>Unlicensed collection activity is unfair.</u> Section 1692f provides that "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Like §1692e, the section lists certain types of conduct, "[w]ithout limiting the general application of the foregoing." The practice of unlicensed collection activity is not only a deceptive or misleading means within §1692e, but is also "unfair" under §1692(f) because it is within "at least the penumbra" of some common law, statutory "or other established concept" of unfairness. <u>FTC v. Sperry & Hutchinson Co</u>., 405 U.S. 233, 244 n. 5 (1972). Unfairness depends on "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by <u>statutes</u>, the common law, or otherwise - whether, in other words, it is within at least the penumbra of some common-law, <u>statutory</u>, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking. 29 Fed. Reg. 8355 (1964) (emphasis added).

For a collection agency / law firm to continue to collect in a state where it is not licensed fits within the concepts of "unethical, oppressive, or unscrupulous." Indeed, under the specific provisions of Connecticut law, unlicensed collection agency activity is a crime. Conn. Gen. Stat. 36a-810. Substantial injury to consumers results from Connecticut's inability to investigate, regulate, or protect its citizens from these defendants' serious and persistent substantive violations. Competitors who comply with licensing laws and Connecticut's collection standards (which parallel the FDCPA) are at a competitive disadvantage with these

9

scofflaw defendants. One of the express purposes of the FDCPA is "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § §1692(e).

II. DEFENDANTS VIOLATED THE FDCPA BY COMMUNICATING WITH PLAINTIFF WHO WAS KNOWN TO BE REPRESENTED BY COUNSEL

In 2002, Plaintiff had sued defendants for their collection efforts on the Wilson checks. Yet, defendants sent her another letter in February 2003, demanding five times the amount that they had demanded for the Wilson checks in November 2001. Defendants plainly violated §1692c(a)(2), which mandates that a collector deal only with an attorney once it has knowledge of representation. The Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50104 (1988) (hereinafter "FTC Staff Commentary") Commentary § 805(a)(3) says, "If a debt collector learns that a consumer is represented by an attorney in connection with the debt, even if not formally notified of this fact, the debt collector must contact only the attorney and must not contact the debtor." Here, there was formal notice of representation as to the purported Wilson debt, by prior lawsuit. The violation by attorneys is inexcusable. Herbert v. Monterey Financial Services, Inc., 863 F. Supp. 76, 79 (D. Conn. 1994); Kuhn v. Account Control Technology, Inc., 865 F. Supp. 1443 (D. Nev. 1994); Harvey v. United Adjusters, Inc., 509 F. Supp. 1218 (D. Or. 1981) (letters to consumer after counsel had filed an FDCPA suit on consumer's behalf).

III  DEFENDANTS SOUGHT ILLEGAL AMOUNTS

Defendants were collecting on alleged January 1996 checks to Wilson totaling $402.78. Their November 2001 demand letter sought payment of $1971.80 on the Wilson account.[2] The letter at issue in this case sought $10,277.56 on behalf of Wilson, and warned that plaintiff "may be subject to statutory penalties as determined by the court. . . . You may wish to settle this matter before we seek appropriate relief before a court of competent jurisdiction."

In discovery, defendants admitted that the demand for the additional sum was actually based on some two dozen checks written to several different stores in 1996. They did not disclose this fact in their letter to plaintiff. Defendants also admitted that they had already included, not only the statutory penalties, but a $25 charge for each check. The Service Fee is limited by Connecticut statute to "up to" $20, and applies only to checks written after the 1997 effective date of §52-565a(i).

Defendants did not disclose the inclusion of these improper amounts. On the face of the February 2003 letter at issue in this case (unlike the face of the November 2001 letter), defendants knew that the penalties could be imposed only "as determined by the court." The lawyer defendants arrogated to themselves the penalty and the excessive check charges but concealed their illegal overreaching from the plaintiff.

---

[2] Judge Kravitz has before him a motion for summary judgment as to the November, 2001 collection letter, including the issue discussed in this section: whether defendants' demand for unlawful check and penalty charges violates the FDCPA. Goins v. JBC & Associates, P.C., Civil No. 3:02CV 1069 (MRK).

11

The FDCPA prohibits both misrepresenting the amount of the debt (§1692e) and the attempt to collect any amount not allowed by law (§1692f(1)).  Defendants violated the FDCPA by knowingly seeking a large multiple of any possible underlying debt. Duffy v. Landberg, 215 F.3d 871 (8th Cir 2000); Kojetin v. CU Recovery, Inc., 212 F.3d 1318 (8th Cir. 2000) (per curiam); Picht v. Jon R. Hawks, Ltd., 236 F.3d 446 (8th Cir. 2001). Withholding significant information  is a deceptive practice. Ingham v. Eastern Air Lines, Inc., 373 F.2d 227, 239 (2d Cir. 1967); Bailey Employment System, Inc. v. Hahn, 545 F. Supp. 62, 67  (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983). Compare Emery v. American General Finance, Inc., 134 F.3d 1321, 1323 (7th Cir. 1998) (misleading omission can be fraud).

IV  DEFENDANTS  THREATENED TO SUE ON A TIME BARRED DEBT.

Defendants were collecting on alleged January 1996 NSF checks. The letter at issue in this case warned that plaintiff "may wish to settle this matter before we seek appropriate relief before a court of competent jurisdiction." At its longest, the statute of limitations was the contract statute, six years. The letter was sent seven years after the date of the checks.

Defendants themselves could not bring civil proceedings, since they did not own the account and had no standing. "We" cannot reserve any "right" we do not have. Rosa v. Gaynor, 784 F. Supp. 1, 5 (D. Conn. 1989) (the only possible construction of "we" is the defendant and others); Herbert v. Monterey Financial Services, Inc., 863 F. Supp. 76, 80 (1994) (lack of authority to sue).

While many cases conclude that one can try to collect on a time-barred debt if suit is not threatened, all authorities agree that mentioning suit on a time-barred debt violates the

FDCPA. E.g., Freyermuth v. Credit Bureau Serv. Inc., 248 F.3d 767 (8th 2001) ("[I]n the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid").

As lawyers, defendants were charged with knowledge that their mention of litigation on a time barred debt was unlawful. One could justifiably conclude that their threat was intentional; after all, they drafted the letter. But this conclusion is forcefully confirmed by defendants' own collection manual, which instructs their collectors as follows in the "Talk Off": Tell the debtor you are calling "from the Law Offices of JBC"; "we will immediately recommend disposition by a court of competent jurisdiction"; "this case will be immediately recommended to the attorney"; "partial payment will not prevent action in the appropriate court"; frequent references to "the attorney"; and, if the debtor insists on speaking with the attorney" "I will be happy to, Sir/Madam, but please be aware that you will be responsible for all attorney fees if I transfer you to the attorney."

## V. DEFENDANTS VIOLATED STATE LAW

Connecticut's Consumer Collections Agency Act and Regulations parallel the FDCPA. Reg. Conn. State Agencies §36a-809-3(f), (g). By violating these parallel state laws, defendants have violated CUTPA, Conn. Gen. Stat. §42-110b. Even if the Banking Department had not already determined by regulation that the practices were unfair or deceptive, a violation of a federal law is a per se violation of CUTPA (unfair or deceptive practices): Dial Corp. v. Manghnani Inv. Corp., 659 F. Supp. 1230, 1238-39 (D. Conn. 1987); Chauvin Intern. Ltd. v. Goldwitz, 927 F. Supp. 40, 49 & n.22 (D. Conn. 1996); Pfizer, Inc. v.

Miles, Inc., 868 F. Supp. 437, 442 (D. Conn. 1994); Nabisco Brands, Inc. v. Kaye, 760 F. Supp. 25, 29 (D. Conn. 1991); Zoological and Ecological Research Found., Inc. v. Crabtree-Haas Imports, Inc., 7 CSCR 1144, 1145 (Oct. 19, 1992) (Katz, J.)

Under CUTPA, there is no need to allege or prove any amount of an ascertainable loss. Hinchliffe v. American Motors Corp., 184 Conn. 607, 612-14, 440 A.2d 810 (1981). "Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property." Id. at 614. "Adoption of the defendants' view, that ascertainable loss is equivalent to actual damages, would eviscerate the private remedy provided by CUTPA." Id. at 616. "The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." Weigel v. Ron Tonkin Chevrolet Co., 690 P.2d 488, 494 (Or. 1984) (citing Hinchliffe). Ascertainable loss does not necessitate a monetary payment. Aurigemma v. Arco Petroleum Products Co., 734 F. Supp. 1025, 1028 (D. Conn. 1990) (court refuses to address "ascertainable loss" because CUTPA does "not require a plaintiff to prove a specific amount of actual damages to make out a prima facie case").

"Ascertainable loss" is a term of art which entitles a plaintiff to bring an action. Once an action is brought, the plaintiff may seek actual damages, or -- if there are no actual damages -- equitable relief.

Section 42-110g provides:

(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.

14

. . . .

(d) In any action brought by a person [the court may award attorney's fees]. . . . In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief.

Being accused of owing a debt which one does not owe is ascertainable loss. Cox v. Sears, Roebuck & Co., 647 A.2d 454, 464 (N.J. 1994); Sorge v. Transworld Systems, Inc., Civil No. 3:94CV71 (JBA) (D. Conn. Sept. 19, 1996); Rizeck v. Connecticut Coast Fitness Centers Inc., 7 Conn. Ops. 469, 471 (Apr. 30, 2001) (rejecting the need to prove actual damages). "It is enough if the consumer received something different from what had been bargained for. [citing *Hinchliffe v. American Motors Corp.,* 184 Conn. 607, 612 (1981)]. Depriving a consumer of information required to be provided by law, or giving a consumer deceptive or misleading information causes "ascertainable loss." Denino v. Valenti, 1993 Conn. Super. LEXIS 2686, 1991 CaseBase 8193 (1993). Collecting a debt through deception or unfair means also causes "ascertainable loss." Halloran v. Spillane's Servicenter, Inc., 41 Conn. Supp., 587 A.2d 176, 181 (1990).

Plaintiff has ascertainable loss when she got a letter that violated state and federal laws. She has a cause of action, even if she recovers only $1.00 in nominal damages. Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 499 (1995). Her monetary loss, to be ascertainable, may be as little as a 33¢ stamp, a toll call, or gas or parking to visit an attorney. Wiginton v. Pacific Credit Corp., 634 P.2d 111 (Hawaii 1981); Shubach v. Household Finance Corp., 376 N.E.2d 140, 141 (Mass. 1979) (toll calls and travel to meet with counsel). St. Paul Fire & Marine Ins. Co. v. Updegrave, 656 P.2d 1130, 1134 (Wash. Ct. App. 1983) (consumer's damages "include

15

the consumer's inconvenience, financial considerations such as loss of time in helping prepare the case").

Even absent actual damages, plaintiff is entitled to the injunctive and punitive relief she seeks. Plaintiff bases her claim for punitive damages on the fact that defendants, attorneys and a law firm, have intentionally persisted for many years in collecting in Connecticut without a collection agency license (despite representing that they are licensed in every state); sent the plaintiff a form letter which seriously misrepresented Connecticut law and the consequences of writing a dishonored check; intentionally abused their status as attorneys to create (unfounded) fear of civil litigation in the recipients of the form letter; sent their intimidating "attorney" form letter without so much as receiving or reviewing any check or the creditors' practices as a basis for forming an opinion about how to manage plaintiff's case; and routinely—but secretly-- imposed charges not permitted by law in their form letters.  No "attorney" should be involved in sending such deceptive form letters to consumers. Any lawyer familiar with the FDCPA, as these defendants are required to be, knows that such tactics have been held to violate the FDCPA since at least 1988. The law cannot be so  interpreted as to be helpless to deter their longstanding and persistent abuses.

## CONCLUSION

There are additional violations, but plaintiff has shown sufficiently numerous and serious violations to warrant an award of the maximum statutory damages by the court and the submission of the amount of punitive damages to the jury.

THE PLAINTIFF

BY___/s/ Joanne S. Faulkner_____
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing was mailed on March 27, 2004, postage prepaid, to:

Jonathan D. Elliot
Sabatino Fiano
P. O. Box 763
Southport CT 06490

_____/s/ Joanne S. Faulkner_____
Joanne S. Faulkner