UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EVELINE GOINS | : CIVIL ACTION NO. |
| | : 3:03 CV 636 (JBA) |
| vs. | : |
| JBC & ASSOCIATES, P.C.<br>JACK H. BOYAJIAN<br>MARVIN BRANDON | : <br>: MAY 31, 2004 |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Introduction**

The defendant, JBC & Associates, P.C., a law firm located in New Jersey, was requested by a client to collect on more than twenty (20) bad checks which had allegedly been written by the plaintiff, Eveline Goins. This action is the third of three commenced by Ms. Goins over collection efforts relating to these same checks. Each of the actions purport to raise, at their core, identical issues regarding the status of JBC's license in Connecticut, regarding the amounts sought to be collected, regarding JBC's references to possible legal proceedings and claims surrounding statutes of limitation. Each action asserts these virtually identical claims under the FDCPA based upon a single letter chosen from among those sent by JBC in its collection efforts. In other words, three letters sent in connection with the collection efforts directed at Ms. Goins have resulted in three separate actions, all purportedly under the FDCPA, raising the same or similar claims.

Goins discharged the obligations reflected by the checks through a bankruptcy, and

1

thereafter commenced the first two actions relating to the defendant's efforts to collect on these checks. Summary judgment motions in each of those two actions are pending. Defendant submits that the maintenance of two or three separate actions over the same overall collection effort violates rules prohibiting the splitting of causes of action and has given rise to an unnecessary multiplicity of litigation intended to circumvent the "per action" damage limitations contained in the FDCPA.

When JBC had learned of Goins' bankruptcy, a hold was placed on her account to avoid violations of the bankruptcy stay. Goins had already commenced litigation against defendant when defendant's computer system generated a single, additional letter to the plaintiff. The letter was not ordered to be produced by either of the individual defendants, and it was not sent as a result of any conscious decision to do so. To the contrary, JBC had placed a hold on Ms. Goins' account pursuant to its regular procedures concerning debtors in bankruptcy or those who are represented by counsel. Instead, the electronic placement of yet additional bad checks written by the plaintiff caused the computer to create a new account and generate the single unintended letter at issue here. None of the violations alleged in this action would have occurred but for the unintentional issuance of the letter which JBC's procedures were intended to prevent. The defendants submit that the unintentional error defense of 15 U. S. C. Sec. 1692k(c) applies, and that summary judgment for the plaintiff is unwarranted.

## I.     THE SUMMARY JUDGMENT STANDARD

The general law concerning motions for summary judgment is well settled. Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

2

any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule Civil Procedure 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986). The facts and related inferences must be viewed in a light most favorable to the non-moving party. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed.2d 538 (1986).

The court will not grant a motion for summary judgment unless "the fact as to which there is no issue warrant judgment for the moving party as a matter of law." Cronin v. Aetna Life Insurance Company, 46 F.3d 196, 202 (2d Cir. 1995). A party may not rely on the mere arguments of counsel to carry its burden on summary judgment. E.g., Leggien v. Mealo, 484 F. Supp. 719 (E.D. Pa. 1980) [statements of counsel not cognizable]; Baker v. Chatham, 939 F. Supp. 782 (D. Haw. 1996). [legal memoranda and oral argument are not evidence]; see also Countryside Oil Co. v. Travelers Ins. Co., 928 F. Supp. 474 (D.N.J. 1995) [unauthenticated documents may not be relied on].

## II.   INTERPRETATION OF THE FDCPA

The FDCPA is based on the fundamental premise that "every individual, whether or not he owes [a] debt, has a right to be treated in a reasonable and civil manner." Cirkot v. Diversified Financial Systems, Inc., 839 F.3d. 941, 944 (D. Conn. 1993)[referring to the remarks of Representative Frank Annunzio, 123 Cong. Rec. 10241(1977)]. JBC does not contest this principle, but notes that the FDCPA must also leave room for legitimate, ethical debt collection

3

activity. The purpose of the FDCPA is to protect consumers from unfair, deceptive and harassing debt collection practices, while leaving collectors free to employ efficient, reasonable and ethical practices in pursuit of their profession. Graziano v. Harrison, 763 F. Supp. 1269 (D. N. J.), modified on other grounds, 950 F.2d 107 (3rd Cir. 1991) (emphasis added); Johnson v. NCB Collections, Inc., 799 F. Supp. 1298 (D. Conn. 1992); Beattie v. DM Collections, Inc., 754 F. Supp. 383 (D. Del. 1991) [FDCPA does not preclude nonabusive statements to encourage payment.]

Claims under the FDCPA are evaluated under the "least sophisticated consumer" standard. Clomon v. Jackson 988 F.2d 1314, 1318 (2d Cir. 1993). However, not all collection efforts violate the rights of the least sophisticated consumer. "Even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id. "Courts ordinarily incorporate an element of reasonableness into even the 'least sophisticated debtor.' " Id. at 1319-20. The FDCPA does not extend to every bizarre or idiosyncratic interpretation by a debtor. Rosa v. Gaynor, 784 F. Supp. 1, 7 (D. Conn. 1989).

In order for the FDCPA to attain its intended purposes, courts must strike a balance between providing protection to consumers from improper and offensive collection tactics and allowing the collection industry, in a reasonable and efficient manner, to perform its essential function in our economy. Debt collectors should not be subject to litigation merely because their task is to collect a debt. Accordingly, courts should construe the FDCPA mindful of its legitimate purposes, and aware of its potential abuses. See, e.g., Lindbergh v. Transworld Systems, Inc., 846 F. Supp. 175, 180 (D. Conn. 1994) (Cabranes, J.) [The Court rejected an

argument under the FDCPA because it reflected "a false, narrow and overly mechanical reading of the FDCPA."]. The FDCPA is not designed to enable consumers to eliminate the legitimate but adverse consequences of non-payment of debt. See Catherman v. Credit Bureau of Greater Harrisburg, 634 F. Supp. 693 (E.D. Pa. 1986); Wright v. Credit Bureau of Georgia, 555 F. Supp. 1005 (N.D. Ga. 1983) [fact recognized by all consumers is that a failure to pay one's bills will affect ability to obtain credit in the future].

### III. PLAINTIFF'S MOTION MUST BE DENIED DUE TO THE COMPLETE FAILURE TO ADDRESS DEFENDANT'S AFFIRMATIVE DEFENSES

In order to prevail as a matter of law, the plaintiff must submit a record which precludes the existence of any material question of fact regarding the necessary elements of the plaintiff's claims, or any of the affirmative defenses asserted by the defendant. See, e.g., United States v. Ownbey Enterprises, Inc., 789 F. Supp. 1145(N. D. Ga. 1992)[burden is on the plaintiff to show the absence of factual issues as to the defendant's affirmative defenses]; Stillman v.Travelers Ins. Co., 88 F.3d 911, 913-4(11th Cir.)[summary judgment against a non-moving defendant not appropriate if affirmative defenses not dealt with in the plaintiff's motion].

In this case, the defendants have asserted the defense available under 15 U.S.C. §1692k(c), sometimes known as the unintentional error or bonafide error defense, as well as the defense of prior pending action and violation of the prohibition against improperly splitting causes of action. See Defendants' Answer, Fourth, Fifth, and Sixth Affirmative Defenses. The plaintiff's submissions are devoid of any information or argument that would address any such defenses.

It is the defendants' contention that the single letter at issue in this case was sent unintentionally despite procedures employed by JBC to avoid communications with parties represented by counsel or consumers who are in bankruptcy. If, as would have been dictated by JBC's intended practice and policy, no letter was sent at all, no violation of any kind could have occurred in this matter. A finding that the sending of the letter was unintentional, and that JBC had procedures in place reasonably adapted to prevent communications with debtors in bankruptcy or who are represented by counsel, would result in judgment for the defendants. 15 U. S. C. Sec. 1692k(c).

The plaintiff's failure to address in any way such an affirmative defense and her resulting failure to establish that no material question of fact exists are fatal to her motion without the necessity of further inquiry or analysis regarding the particular facts of this case. Nonetheless, if one were to examine the affirmative defenses in light of the defendants' submissions, it is evident that questions of fact preclude summary judgment.

The Declaration of Jack H. Boyajian submitted herewith indicates plainly that JBC has procedures in place to prevent communications to consumer debtors who are known to be in bankruptcy or who are known to be represented by counsel. Boyajian Declaration at Par. 5. The single, stray letter which forms the exclusive basis for this third action by Goins was not the product of a conscious decision to communicate further with Goins in the midst of litigation, but arose from the defendant's computer system's mistaken generation of a letter in response to a later placement of even more bad checks allegedly written by the plaintiff. Boyajian Dec. at Par.6-7.

For purposes of the instant motion, these assertions must be accepted as true, Matsushita,

supra, and the trier of fact could find in favor of the defendants. As a result, plaintiff has not met her significant burden of precluding material questions of fact, and her motion for summary judgment must be denied.

### IV. THIS ACTION VIOLATES PROHIBITIONS AGAINST SPLITTING CAUSES OF ACTION AND CREATES UNNECESSARY DUPLICATION.

The fact that plaintiff has failed to address defenses relating to the pendency of two prior actions against defendants named in this action on similar legal theories based upon a similar form letter is also fatal to the plaintiff's instant motion. In fact, apart from the plaintiff's mere failure to address the defendants' affirmative defenses, the existence of the two prior actions by the same plaintiff over the same general collection effort, warrants dismissal of this unnecessary and duplicative third action.

In determining whether there are any material questions of fact concerning the defendant's Fifth or Sixth Affirmative Defense, this Court is entitled to take judicial notice of the proceedings in the prior actions. See, e.g., National Fire Insurance Co. v. Thompson, 281 U.S. 331, 336 (1930) [a court is permitted to take judicial notice of related proceedings and records from other cases before that court]; Day v. Moscow, 955 F.2d 807, 811 (2d. Cir. 1992) [the court may properly take judicial notice of documents from a prior litigation to determine whether claims are barred by the prior litigation]; Jacobsen v. AEG Capital Corp., 50 F.3d 1493, 1496 (9th Cir. 1996) [affirming a district's courts grant of summary judgment on grounds of claim and issue preclusion based on the district court's judicial notice of extensive records and transcripts from a prior bankruptcy proceeding involving the same parties]. Taking judicial notice of the proceedings from the prior actions, it is without doubt as a matter of law that both the prior

7

action and the instant action concern the same subject matter, based upon similar facts and evidence, and that any claim asserted here could have and should have been asserted in a prior action.

### A.   The Rule Against Splitting Causes of Action.

It is well settled that a plaintiff is prohibited from splitting causes of action into multiple suits. Alyeska Pipeline Service Company v. United States, 688 F.2d 765, 769 (Court of Claims 1982); International Railways of Central America v. United Fruit Company, 373 F.2d 408, 417 (2d Cir. 1966); Ritchie v. Landau, 475 F.2d 151, 156 n. 5 (2d Cir. 1973). "Plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." Curtis v. Citibank, N. A., 226 F.3d 133, 138-9(2d Cir. 2000).

Indeed, the splitting of claims into multiple suits is legally fatal to the maintenance of the later-filed action. Alyeska Pipeline Service Company, supra, at 769 [granting partial summary judgment in favor of the defendant on claims that were barred by the rule against splitting causes of action]; Myers v. Colgate-Palmolive Company, 102 F.Supp.2d 1208, 1224 (D. Kan. 2000) [granting a Federal Rule 12(b)(6) motion to dismiss plaintiff's ERISA claims based on the rule against splitting causes of action]. A district court has the authority, "as part of its general power to administer its docket [to] stay or dismiss a suit that is duplicative of another federal court suit." Curtis, supra at 138; see also Salib v. I. C. System, Inc., 2002 WL 31060368(D. Conn. 2002)[the rule prohibits a plaintiff from prosecuting his case piecemeal].

The long-recognized purpose of the rule against splitting causes of action is to preclude plaintiffs from prosecuting their claims piecemeal, United States v. Haitian Republic, 154 U.S. 118, 125 (1894), and avoid undue clogging of the court dockets. Ritchie v. Landau, supra, at 156

8

n. 5. Hence, a plaintiff must recover all damages arising from given operative facts in a single action. International Railways of Central America, supra, at 417. "[C]laim splitting cannot be justified on the ground that the two actions are based on different legal theories." Alyeska Pipeline Service Company v. United States, 688 F.2d at 769 citing 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, Section 4411 (1981).

In Myers, supra, the plaintiff, a discharged employee, brought an age and sex discrimination case against her former employer. The plaintiff thereafter commenced a second action against her former employer alleging that it had violated the Employee Retirement Income Security Act ("ERISA") in terminating her. The two cases were ultimately consolidated. Myers, 102 F.Supp.2d at 1211. The defendant moved to dismiss the ERISA case after consolidation, arguing that it was barred because the plaintiff had impermissibly split her cause of action. Id. at 1224.

The Myers court dismissed the ERISA case, finding it arose out of the same nucleus of facts and substantially the same evidence as the prior discrimination action. In reaching its decision, the court summarized the purposes underlying the rule against splitting causes of action imposed by the federal courts:

> Here, plaintiff's age and sex discrimination case and her ERISA case arise out of the same transactional nucleus of facts, and would involve substantially the same evidence. Both complaints allege wrongs arising from the fact of her termination from employment, and both cases challenge Colgate's stated reasons for termination. Resolution of both cases would turn on the same primary issue, namely, what the defendant's real reason was for terminating the plaintiff. Under these circumstances, it is immaterial whether the two cases seek identical relief, or would both be tried to a jury.
>
> Permitting plaintiff to pursue her ERISA claims would frustrate the policies underlying the res judicata doctrine, put the parties to the cost and vexation of multiple lawsuits, deplete judicial resources, foster inconsistent decisions, and diminish reliance on judicial

9

decisions. Plaintiff had an opportunity to amend her ADEA/Title VII complaint to add ERISA or other claims, but failed to do so. She cannot now seek to remedy this defect by bringing another suit naming the identical plaintiff, the identical defendant, and identical operative facts.

Myers, supra, at 1224 (internal citations omitted).

### B. The Instant Claims Are Based On The Same Nucleus Of Operative Facts And Substantially The Same Evidence As Plaintiff's Claims In The Prior Action.

A comparison of the Plaintiff's complaint and motions in the instant action to those filed in the Prior Action reveals that both cases obviously concern the same central issue – whether the Defendant violated the FDCPA in allegedly communicating with the Plaintiff as to certain dishonored checks when Defendant was allegedly not licensed as a consumer collection agency in Connecticut. In this regard, the actions are virtually indistinguishable as a matter of fact, law and evidence. Both cases concern the same form of collection activity between the same parties and the same alleged dispute. The letters at issue are substantially similar, the checks placed with JBC were from a particular client, initially in a single master account. The evidence in the actions overlaps substantially. The damages in one case would be virtually indistinguishable from damages in the other. Plaintiff cannot recover the same damages three times. In fact, a judgment in favor of the Defendants in either of the prior actions would almost certainly have res judicata or collateral estoppel effect in this case. See Expert Electric Inc. v. Levine, 554 F.2d 1227, 1234 (2d Cir. 1977) (discussing what constitutes the same cause of action for res judicata purposes):

> The Second Circuit has adopted a broad view of what constitutes the same cause of action. Actions need not be identical; they only need be integrally related. In assessing claims, the Court considers several related factors, not one of which is necessarily

10

> dispositive, including: (1) whether the same transaction or connected series of transactions is at issue; (2) whether the same evidence is needed to support both claims; and (3) whether the facts essential to the first action were present in the first." ... The crucial element in determining whether a newly asserted claim is based on the same cause of action as a previously decided claim is the factual predicate of the several claims asserted. For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.

Accord Wilkins v. Jakeway, 183 F.3d 528, 532, n. 4 (6th Cir. 1999) (internal citations omitted).

> Both the FCA and First Amendment actions clearly encompassed the same set of facts--whether Wilkins was wrongfully discharged for airing complaints about the misuse of funds and the Audit Office's contribution to that alleged abuse. It is clear to this panel that the Plaintiff advanced two separate theories in two separate suits before two different courts for one common set of facts. This is the exact situation which the doctrine of res judicata, by compelling litigants to bring all related claims in one suit, seeks to avoid. . . . Plaintiff's claims could have and should have been raised in the same suit.

### C. The Plaintiff Could Have And Should Have Asserted Her Instant Claims In The Initial Action.

Plaintiff could readily have sought to amend her claim in the initial action to include reference to the additional letter in question. Plaintiff never even sought leave to amend her complaint in the initial action to include the claims made in this action.

A cause of action under the FDCPA potentially contemplates a single cause of action for multiple allegedly violative acts of a debt collector. The FDCPA provides maximum statutory damages of $1,000 even in actions involving multiple violations. 15 U. S. C. Sec. 1692k(a)(2)(A). The statutory damages are awarded in light of the frequency and persistence of noncompliance. 15 U. S. C. Sec. 1692k(b)(1). To permit the plaintiff to file duplicative suits as she has is to invite every FDCPA plaintiff who claims multiple violations to file multiple lawsuits. Such a practice flies in the face of the terms of the FDCPA and allows plaintiffs to

burden the court and defendants with a multiplicity of litigation which court procedures are designed to avoid, merely to augment the plaintiff's potential damage claims. Cf. 28 U. S. C. Sec. 1927.

Having failed to amend her complaint in a prior action capable of granting her complete relief, the Plaintiff cannot use a second or third action as a vehicle to achieve a multiple recovery or to leverage a settlement with the defendants through the cost, expense and harassment of multiple lawsuits. Cf. Electric Boat Co. v. United States, 81 Ct.Cl. 361 (Court of Claims 1935) cert. denied, 297 U.S. 710 (1936) [requiring a litigant to amend a pending suit to add later accruing claims to avoid dismissal of a later suit on the ground he has split his cause of action]; Myers, 102 F.Supp.2d at 1224 [dismissing the plaintiff's ERISA claims after consolidation with the prior pending employment discrimination action as a result, in part, because plaintiff never sought to amend its complaint in the discrimination action to include the ERISA claims].

The instant action presents just the type of situation meant to be avoided by the rule against splitting causes of action – separate actions, alleging the same nucleus of operative facts, that deplete judicial resources, put the parties to the cost and vexation of multiple lawsuits, and cause the accrual of unwarranted attorney's fees. If not barred, such claims permit the Plaintiff to leverage the Defendant with unnecessary delay and the needless cost of multiple litigations. Such a claim warrants dismissal and cannot form the basis for summary judgment for the plaintiff.

Aside from the plaintiff's complete failure to address pleaded affirmative defenses, numerous other claims by plaintiff on the record submitted are seriously flawed, as follows:

V.   **THERE IS NO EVIDENCE SUBMITTED BY THE PLAINTIFF SUGGESTING THAT EITHER MARVIN BRANDON OR JACK BOYAJIAN ACTED AS THE DEBT COLLECTOR WITH RESPECT TO THE LETTER AT ISSUE IN THIS CASE.**

The plaintiff's counsel asserts, generally, that Marv Brandon an attorney at JBC is a "debt collector." Although there is little question that from time to time Mr. Brandon may act as a debt collector, that does not make him a debt collector for all times and all purposes regardless of his involvement in a particular collection. Certainly, the plaintiff could not legitimately argue that Mr. Brandon is liable as a "debt collector" for acts which he did not commit merely because he has served as a debt collector with respect to other consumers.

In this case, the single letter in question does not bear Mr. Brandon's signature and he did not cause the letter to be sent. See Affidavit of Marvin Brandon. In fact, in keeping with JBC's general policies designed to comply with the law prohibiting consumer contact under certain circumstances, at the relevant time, Mr. Brandon had no involvement at all in any collection activity with respect to plaintiff Brandon Aff. At Par. 4-5.

Similarly, the letter in question was not signed or sent by defendant Boyajian. There is no evidence in the record that with respect to this particular letter to plaintiff Mr. Boyajian played an actionable role in its transmittal to the plaintiff. Mr. Boyajian, too, comported himself in accordance with the requirements of 15 U.S.C. §1692c in avoiding further communications with plaintiff.

Even if Messrs. Boyajian and/or Brandon have occasion to act as debt collectors in other instances, there is no evidence whatsoever that they acted as a debt collector with respect to the challenged collection activity in this case. Accordingly, summary judgment against either of

them is unwarranted, regardless of any violations alleged against JBC generally. At a minimum, the arguably superfluous liability of such individuals raises unresolved questions of fact, or in the absence of any evidence to the contrary, would warrant judgment in favor of Brandon and Boyajian, individually.

### VI. THE PLAINTIFF'S CLAIM REGARDING LICENSING IS IMPROPERLY SUPPORTED AND INCORRECT.

The plaintiff asserts that any violation of state law by a debt collector, in particular, a failure to be licensed in a particular state, equates to a violation of the FDCPA. This general proposition is overbroad and incorrect.

There are numerous potential violations of state or local law that impact upon none of the policies underlying the FDCPA, and that such violations, even regarding state licensure, do not necessarily give rise to a federal violation. See, e.g., Richardson v. AllianceOne Receivables Management, 2004 WL 867732(S.D.N.Y. (Cote, J) (appeal pending) [failure to include required license number in correspondence did not violate FDCPA]; Lindbergh v. Transworld, 846 F. Supp. 175(D. Conn. 1994) [Cabranes, J] [ correspondence with return address at unlicensed location may violate state law, but not the FDCPA]; Wade v. Regional Credit Association, 87 F.3d 1098(9th Cir 1996)[violation of state licensing law not a per se federal violation]; Ferguson v. Credit Management Control, Inc. , 140 F. Supp.2d 1293(M.D. Fla. 2001)[no per se FDCPA violation].

The origins of the plaintiff's theory is based on an earlier decision in this Court which has been the source of disagreement in other district courts as well as the Circuit Court of Appeals,

14

Gaetano v. Payco of Wisconsin, 774 F. Supp. 1404 (D. Conn. 1990). Interestingly, in Gaetano the Court found for the defendant on every issue which defendant actually briefed. It is worth noting that the only issue on which plaintiff prevailed in Gaetano was one on which the defendant, inexplicably, failed to brief the matter. Courts have therefore questioned the precedential value of the decision and have rejected it. Ferguson, supra ; Wade, supra.

In Wade, the first Circuit Court of Appeals to address the issue, the Court rejected the reasoning in Gaetano and held that the failure to have a state license was not a per se violation of the FDCPA. The plaintiff's attempt to dismiss Wade is a bit cavalier. Her contention that other Circuit Courts have adopted Gaetano is incorrect. In Veach v. Sheeks, 316 F.3d 690, 693(7th Cir. 2003, cited by plaintiff at p. 6 of her Memorandum, the opinion contains no discussion of Gaetano or the proposition for which the case is cited. Plaintiff also cites Picht v. Hawks, 236 F.3d 446(8th Cir. 2001), which is entirely distinguishable, involved wrongful threats of prejudgment garnishment under Minnesota law. Although the court found a violation of the FDCPA, nowhere did the court opine that violation of any state law equates to a violation of the FDCPA. The Second Circuit has yet to address the issue.

The letter at issue in this case makes no representations about licensure at all. Moreover, there is nothing in the fact of not being licensed which necssarily causes a collection effort to fall within any category of harassment or unconscionable conduct prohibited by the FDCPA.

Moreover, regardless of the legal question at issue, the plaintiff has failed to establish a factual predicate for the requirement that JBC possess such a license. Plaintiff has failed to show for which corporate client JBC was collecting, the location of the client or the level of activity conducted by JBC in Connecticut. Under the relevant statute, collectors and attorneys located

out of state are treated differently than those within the state, and collectors or attorneys servicing creditors within the state are treated differently than those serving creditors located outside the state. The requirements triggering licensure may differ depending on the facts. Here, the need for JBC to be licensed has been assumed by the plaintiff's counsel. Plaintiff has offered no competent proof, other than counsel's assertions as to the locations of the creditors who constitute the clients of JBC or whether and to what extent JBC has engaged regularly in Connecticut in collection activity that was required to be licensed.

### VII. MERE MENTION OF THE POSSIBLITY OF SEEKING RELIEF FOR A BOUNCED CHECK, EVEN WHERE A LIMITATIONS PERIOD HAS EXPIRED, DOES NOT VIOLATE THE FDCPA WHERE THE RUNNING OF SUCH PERIOD IS MERELY AN AVAILABLE DEFENSE THAT DOES NOT EXTINGUISH THE DEBT.

In further support of her Motion, Plaintiff contends that JBC's letter violated the FDCPA as a matter of law solely because it referenced seeking "appropriate relief." Simply stated, there was nothing false, misleading or deceptive about JBC's mention of such possibility.

Plaintiff seeks to stand all pre-litigation debt collection on its head by arguing that JBC could not make any mention of possible proceedings unless the firm itself intended to commence such proceedings against the Plaintiff. In other words, Plaintiff argues that unless JBC intended to actually handle the litigation itself, it was precluded from mentioning the possible commencement of such proceedings in its letter. Plaintiff has not, nor can she, cite to any legal authority supporting such an unfounded premise.

Plaintiff argues that JBC's reference to further proceedings was false and misleading because JBC was precluded by the applicable statute of limitations from pursuing any such proceedings against the Plaintiff. Plaintiff's argument, however, is legally flawed.

Connecticut law is clear that, in both civil and criminal proceedings, the applicable statute of limitations merely serves as an affirmative defense that must be raised by the defendant or else it is waived. "The statute of limitations is not a jurisdictional bar to prosecution; it is an affirmative defense, which must be raised and can be waived." State v. Middlebrook, 51 Conn.App. 711, 713 n. 4, 725 A.2d 351, cert. denied, 248 Conn. 910, 731 A.2d 310 (1999). Similarly, in civil proceedings, the "Statute of Limitations creates a defense to an action. *It does not erase the debt.*" (Emphasis added). Zapolski v. Sacks, 191 Conn. 194, 198 (1983) quoting Buckley v. Buckley, 144 Conn. 403, 411 (1957).

In short, the running of the limitations period was itself no jurisdictional barrier to suit, and it did not extinguish any debt. Any suggestion that litigation might be pursued is not precluded by any limitations period, and no violation results from the mere fact that a limitations period has run. Accordingly, the plaintiff's argument about the statute of limitations is misplaced.

## VIII. THE PLAINTIFF'S CUTPA CLAIM FAILS

The plaintiff's claim under CUTPA is also lacking an essential ingredient and competent evidence thereof. In order to maintain a civil action under CUTPA, the plaintiff must suffer an "ascertainable loss of money or property, real or personal." Conn. Gen. Stat. 42-110g. The Court should note that the Complaint in this action in devoid of any allegation of an "ascertainable loss

17

of money of property." Moreover, the plaintiff's deliberately succinct affidavit fails to make even any assertion of such a loss.

The plaintiffs' craftily worded brief seeks to reduce the statute's requirement of ascertainable loss to a relatively meaningless, purely theoretical construct. While we acknowledge that the "ascertainable loss of money or property real or personal" may be different than the "actual damages" recoverable under the statute and that the necessary showing may not require a showing as to a specific amount, in the instant case there is no showing whatsoever. Plaintiff's counsel's discussion is entirely theoretical and misguided.

The suggestion that plaintiff may create an ascertainable loss by writing or talking to an attorney is patently absurd. Cases in other jurisdictions suggesting such a standard are not applicable here.

Section 42-110g (a) expressly limits the right to bring a CUTPA action to "[a]ny person who suffers any *ascertainable loss of money or property* ... as a result of the use or employment of a method, act or practice prohibited by section 42-110b...." (Emphasis added). To the extent that an individual suffers such an ascertainable loss, he or she *"may bring an action ... to recover actual damages"* C.G.S. Section 42-110g (a) (Emphasis added).

Consistent with the express language of the Act, the Connecticut courts have uniformly held that "[t]he ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." Hinchliffe v. American Motors Corp., 184 Conn. 607, 615, 440 A.2d 810 (1981). Thus, to be entitled to *any* relief under CUTPA, a plaintiff must first prove that he has suffered such a loss due to a CUTPA violation. Id.; Gargano v. Heyman, 203 Conn. 616 (1987). For purposes of

CUTPA, "[a]n ascertainable loss is a deprivation, detriment, [or] injury that is capable of being discovered, observed or established." (Internal quotation marks omitted.) Service Road Corp. v. Quinn, 241 Conn. 630, 638, 698 A.2d 258 (1997).

The plaintiff's affidavit, the only competent source as to whether she has suffered any actual damages or any ascertainable loss of money or property, reveals absolutely nothing in either regard, thereby omitting an essential ingredient to any claim under CUTPA. Plaintiff's pleadings, as well as her submissions in support of the instant motion, are devoid of any allegations of loss of money or property or any proof that such loss occurred. In fact, under the facts of this case, it is inconceivable how any of the alleged violations would result in such a loss. Plaintiff ignored the letters in question, made no payments and had her obligations discharged in bankruptcy.

In cases where no ascertainable loss of money or property has been alleged or proved, such claims are under CUTPA are not sustainable. E. g., Reader v. Cassarino, 51 Conn App. 292(1998); MacMillan v. Higgins, 76 Conn App. 261(1998). Having demonstrated no ascertainable loss, the Plaintiff cannot sustain her CUTPA claim.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for partial summary judgment should be denied.

THE DEFENDANTS,
JBC & ASSOCIATES, P.C.
JACK H. BOYAJIAN
MARVIN BRANDON

By: _____
Jonathan D. Elliot (Ct 05762)
Kleban & Samor, P.C.
2425 Post Road
Southport, CT 06490
(203) 254-8969

### CERTIFICATION

This is to certify that a copy of the foregoing has been mailed postage prepaid this 1st day of June 2004, to:

Joanne S. Faulkner, Esq.
123 Avon Street
New Haven, CT 06511

_____
Jonathan D. Elliot

20