UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

F I L E D

JUL 13  I  30 PM '04

U.S. DISTRICT COURT

EVELINE GOINS

v.                                                   CASE NO. 3:03CV 636 (JBA)

JBC & ASSOCIATES, P.C.  ET AL.                          July 12, 2004

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
## PARTIAL SUMMARY JUDGMENT

**Illegal fees.** By not factually opposing or discussing plaintiff's claim that defendants'

letter of February 17, 2003, sought illegal statutory fees and penalties on old dishonored

checks, defendants have conceded liability on the issue. D. Conn. L. Civ. R. 7(a)1.


**Threatening suit on time barred debt.** Plaintiff claims that the letter's references to

"proceed with the allowable remedies" (¶ 1), "determined by the court" (¶ 2), "before we seek

appropriate relief before a court of proper jurisdiction" (¶ 3), on an attorney's letterhead, using

the phrase "attorneys at law" four times, is an illegal threat to sue on the 1996 time-barred

debts under the "least sophisticated consumer" standard.[1] Defendants have not responded to

the substance of the claim and ignored the well established FDCPA law cited by plaintiff.[2]

Defendants' barebones response (Def. Mem. at 16-17) effectively concedes this claim as well.

---

[1] Avila v. Rubin, 84 F.3d 222, 229 (7th Cir. 1996) ("An unsophisticated consumer, getting a letter from an 'attorney' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking").

[2] Even the state statute of limitations cases they cite do not apply: Where, as here, a statute provides a right which did not exist at common law, the statute of limitation bars the right, not merely the remedy. L. G. DeFelice & Son, Inc. v. Town of Wethersfield, 167 Conn. 509, 512, 356 A.2d 144 (1975); Isaac v. Mount Sinai Hospital, 3 Conn. App. 598, 601-02 (1985). When the statute bars the remedy, the collection violates the FDCPA. Klewer v. Cavalry Investments, LLC, 2002 WL 2018830 (W.D. Wis. Jan. 30, 2002).

Collecting without Connecticut Licensing. The issue herein is defendants' pervasive, longstanding, and intentional violation of a significant consumer protection licensing law, which cannot be characterized as a tangential violation of a technical state law, as defendants posit. Def. Mem. at 14-15. Defendants are reduced to claiming that plaintiff has "failed to show for which corporate client JBC was collecting [contra, the letter refers to Wilson Suede & Leather], the location of the client [there is no dispute that plaintiff is a Connecticut resident; or that the letter demanded Connecticut bad check penalties], or the level of activity conducted by JBC in Connecticut [contra, JBC has been sued several times for its collection activities in Connecticut; JBC admits collecting in Connecticut on behalf of such entities as Toys-R-Us, Kids-R-Us, CVS, Marshall, Linens & Things, Foot Action, Bob's Stores (founded and headquartered in CT), KayBee Toys, and Acme Markets [Answer ¶ 15]; admits having letters tailored to Connecticut [Brandon Dep. 33; Bojayian Dep. at 71[3]]; admits applying for a Connecticut collection agency license [Boyajian Dep at 29] and admits placing accounts for collection with Connecticut attorneys [Boyajian Aff]." Since plaintiff filed her Motion for Summary Judgment, the Connecticut licensing authority has issued a cease and desist order as to JBC's unlicensed collection activity. Copy Attached. So has the Maine regulator. Copy attached. So has Minnesota (note the violations alleged which make the same claims plaintiff does). Copy attached.

---

[3] Unlike other Dep. references, page 71 was not appended to the Local Rule 56(a)1 Statement, so is attached hereto.

2

Plaintiff agrees with defendants that the requirements triggering licensing differ depending on the facts. Defendants, however, meet those licensing requirements. Conn. Gen. Stat. §36a-801(a) mandates licensing if the collection agency "(2) has its place of business located outside this state and collects from consumer debtors who reside within this state for creditors who are located within this state; or (3) has its place of business located outside this state and regularly collects from consumer debtors who reside within this state for creditors who are located outside this state." Based on the uncontroverted facts, Defendant JBC must be licensed. Both tests apply. Defendants do not controvert the facts or provide any affidavit contradicting their admitted level of activity. Under Rule 56(e), they have conceded this issue.

<u>Defendants sent a letter with knowledge of representation by counsel.</u> Defendant attorneys admit that the letter should not have been sent to plaintiff because they knew she was represented by counsel. They assert the bona fide error defense as to this claim only.[4]

<u>Bona fide error defense raises no factual issues.</u> Boyajian's affidavit describes general procedures but does not state that they were applied to plaintiff's consumer file, or reveal who applied them and when. He asserts generally that collectors and attorneys are informed not to work such a file, but does not say how, whether or by whom any such information was conveyed as to this plaintiff's file. Boyajian claims that the letter went out "due to an imperfection in the computer program or an inadvertent creation of a merged account." He

---

[4] The bona fide error defense (as with the other defenses) is ineffectual because it does not contain a short and plain statement of any facts supporting the defense, as required by Fed. R. Civ. P. Rule 8. <u>Schechter v. Comptroller of City of New York,</u> 79 F.3d 265, 270 (2d Cir. 1996) (Affirmative 'defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy.' *National Acceptance Co. of Am. v. Regal Prods., Inc.,* 155 F.R.D. 631, 634 (E.D. Wis. 1994).

claims that the computer issued a letter "not only about the newly placed checks, but swept in

formation concerning the prior placements as well." In other words, the way the computer

worked, the violation was bound to occur. As one court noted, defendant's proof is "evidence

of the error itself," rather than evidence of procedures reasonably adapted to avoid the

error. Sibley v. Firstcollect, Inc., 913 F. Supp. 469, 472 (M.D. La. 1995). Boyajian does not

describe any checking mechanism in existence in February 2003 to detect and prevent the

letter from being sent after the computer generated it. Pipiles v. Credit Bureau of Lockport,

Inc., 886 F.2d 22, 27 (2d Cir. 1989) (even if violation unintentional, defendant must prove that

it has established statutory procedures) (citing Seabrook v. Onondaga Bureau of Medical

Economics, 705 F. Supp. 81, 87 (N.D.N.Y. 1989)).

Boyajian's affidavit does not succeed in raising the bona fide error defense. Cacace v.

Lucas, 775 F. Supp. 502, 505-06 (D.Conn. 1990) (mere mistake insufficient); Spencer v.

Henderson-Webb, Inc., 81 F. Supp. 2d 582, 591-92 (D. Md. 1999) (procedures were

"woefully inadequate" to prevent the particular error); Adams v. Law Offices of Stuckert &

Yates, 926 F. Supp. 521, 529 (E.D. Pa. 1996) (training and written procedures insufficient to

show bona fide error: "The debt collector must have in place some ongoing policy that

operates to detect, correct and prevent errors"); Johnson v. Eaton, 873 F. Supp. 1019, 1028

(M.D. La. 1995) (having policies and procedures insufficient); Martinez v. Albuquerque

Collection Services, Inc., 867 F. Supp. 1495, 1502-03 (D.N.M. 1994); Bitah v. Global

Collection Services, Inc., 968 F. Supp. 618, 623 (D.N.M. 1997) (no "firewall"

procedures; as in the instant case, lack of monitoring actually facilitated violation); Johnson

v. Statewide Collections, Inc., 778 P.2d 93 (Wyo. 1989) (no proof of procedures designed "to

4

preclude just such an error"). See also Thomka v. A.Z. Chevrolet, Inc., 619 F.2d 246, 251 (3d Cir. 1980) (TILA) (courts "require that a special system be established to assure that no initial errors occur, and that a checking mechanism be maintained to catch any errors that slip through the system").

Defendants have not met the burden to show that they maintained a procedure (much less the multiple procedures required by statute) reasonably adapted to avoid "this specific type of error." Teel v. Thorp Credit Inc., 609 F.2d 1268, 1270 (7th Cir. 1979) (TILA) (system "almost invited this variety of error"). Cf. Pedro v. Pacific Plan, 393 F. Supp. 315, 322 (N.D. Cal. 1975) (TILA) (the error was built into the form [here, computer], so defendant couldn't claim procedures reasonably adapted to avoid it).

Defendants' Mem. at 6 characterizes the letter sent to her after knowledge of representation by counsel as a "single, stray letter." Unfortunately for defendants, it has happened again. See Aff. of Norman Lau, appended. The system still does not work.

Splitting causes of action [defendants' Fifth Affirmative Defense (prior pending action) and Sixth Affirmative Defenses (splitting causes of action)]. Defendants' Mem. at 7-12. Defendants claim that "JBC's efforts were all part of the effort to collect on this single master account." Declaration of Boyajian Doc No. 49.[5] In other words, once a collection agency has been sued on one creditor's account, it has a free pass for later violations for the same creditor, as well as for other violations for its other creditor clients. Defendants' aim is

_____

[5] At his deposition of July 6, 2004, Mr. Boyajian refused to answer questions related to the affirmative defenses, claiming that this action is "separate and distinct." His counsel agreed.

5

to limit plaintiff to one statutory damages amount (up to $1,000) for separate violations. 15

U.S.C. § §1692k(a)(2)(A).

Defendants' claims fail as a matter of fact and law because the claim in this case first

arose several months after the prior actions had been filed. Plaintiff's claim that defendants

improperly sent a letter to a represented debtor was not and could not have been raised in the

earlier suits; it hadn't happened. Defendants' claim that plaintiff cannot bring a third lawsuit,

based on the contents of a third letter improperly sent to plaintiff after the time to amend the

pleadings had expired in the first two lawsuits, is untenable on its face, and as a matter of law.

Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) ("Accordingly, if, after the first

suit is underway, a defendant engages in actionable conduct, plaintiff may -- but is not

required to -- file a supplemental pleading setting forth defendant's subsequent conduct.

Plaintiff's failure to supplement the pleadings of his already commenced lawsuit will not result

in a res judicata bar when he alleges defendant's later conduct as a cause of action in a second

suit"); NBN Broadcasting v. Sheridan Broadcasting Networks, 105 F.3d 72, 78-79 (2d Cir.

1997) ("[A] plaintiff has no obligation to expand its suit in order to add a claim that it could

not have asserted at the time suit was commenced).

Since there are no factual issues regarding these two affirmative defenses, and they fail

as a matter of law, defendant's claim that plaintiff's Motion for Summary Judgment should

be denied for failure to address these defenses – which defendant did not raise in the pre-filing

conference – fails.

6

Defendants are debt collectors. Def. Mem. at 13-14. Defendants spend a mere four paragraphs asserting that the individual defendants are not debt collectors, which is important to them because the corporate defendant is no longer extant. Defendants are now operating under the name JBC Legal Group, P.C., a California Professional Corporation with offices in New Jersey and California. http://ftpdev.j-b-c.com/ and http://www.jbclegal.com/ True to form, however, its corporate status is "suspended." See attached.

Defendant Brandon claims he is not a debt collector "with respect to this action." Yet, Defendants admit that "JBC's efforts were all part of the effort to collect on this single master account." Declaration of Boyajian Doc No. 49. Brandon has freely admitted he is a debt collector in his Answer in Goins v. Brandon, Civil No. 3:02cv 1537 (AVC). Brandon is also the only attorney named (twice) on the letterhead of the prior letters he sent on behalf of Wilson and Marshalls, and he "signed" both letters. Since Brandon is a debt collector in the other cases, he is a debt collector in this case.

Moreover, the letter at issue in this case refers to "our" previous efforts, "our client" and "we" being about to seek appropriate relief in court. Who can "we" be other than the person whose name is on "our" prior letters? Rosa v. Gaynor, 784 F. Supp. 1, 5 (D. Conn. 1989) (the only possible construction of "we" is the defendant and others). Defendants consciously sought to convey attorney involvement, and Brandon was that attorney.

Boyajian describes Brandon's extensive collection duties at p. 51 of his deposition, contradicting Brandon's claim not to be a debt collector. Moreover, Brandon and Boyajian both drafted the form of the letter. Documents appended to plaintiff's Motion to Strike Declarations, filed contemporaneously herewith. That is sufficient to render Brandon a debt

7

collector. Of course, Boyajian is the owner of JBC; his affidavit says he is "a principal"

therof; he has admitted to being a debt collector [Boyajian deposition at 25] and has submitted

no affidavit to the contrary. One is a debt collector if either the principal purpose of his

business is debt collection or if he regularly attempts to collect consumer debts, even

indirectly, such as by formulating, reviewing or approving debt collection letters and policies.

Piper v. Portnoff Law Associates, Ltd., 274 F. Supp. 2d 681, 689-90 (E.D. Pa. 2003); Musso v

Seiders, 194 F.R.D. 43, 46-47 (D. Conn.1999);  Egli v. Bass, 1998 WL 560270 (N.D. Ill.

1998) (principal who was responsible for devising and implementing procedures personally

liable); In re National Credit Management Group, 21 F. Supp. 2d 424, 461 (D.N.J. 1998)

(officers can be individually liable if they played a part in controlling, directing or formulating

the policies and practices which violate the law; or have authority to control the violators and

actual or constructive knowledge of the violations).

        Defendants have not successfully raised any issues of fact, or even inferences in their

favor, that they are not debt collectors. However, to the extent they claim they did not

participate in sending a letter threatening litigation on their law office letterhead, they have

affirmatively admitted violating the FDCPA by sending an attorney letter with no meaningful

involvement. (Miller v. Wolpoff & Abramson,L.L.P., 321 F.3d 292, 300 (2d Cir. 2003),

citing Clomon v. Jackson, 988  F.2d 1314, 1321 (2d Cir. 1993) and Nielsen v. Dickerson, 307

F.3d 623, 638 (7th Cir. 2002) (holding that the FDCPA was violated where the attorney

"knew nothing about the debtor and her potential liability beyond what [the client] had

conveyed to him; and [the client] provided [the attorney] only the bare information that [he]

required in order to complete the blanks in his form letter").  Summary judgment should enter

8

in favor of plaintiff based on defendants' contention that they had no meaningful involvement in the collection activities.

Rule 56 Statement. Plaintiff respectfully refers the Court to her Opposition to Defendants' Motion to Strike her Rule 56 Statement as to most of the defendant's claims in their Rule 56 Statement.

Plaintiff's Statement ¶¶ 26-28 relied on defendants' failure to respond to Request for Admissions to establish the facts recited therein. Defense counsel claim they had never seen the September Request. But they saw it at the end of March when plaintiff filed her Motion for Summary Judgment. They still did not respond within 30 days. Defendants did not deny the paragraphs nor did they seek relief from the Admissions pursuant to Rule 36(b). The matters are now admitted.[6]

CONCLUSION

Partial summary judgment should enter for plaintiff as to liability. There are additional violations, but plaintiff has shown sufficiently numerous and serious violations to warrant an award of the maximum statutory damages by the court and the submission of the amount of punitive damages to the jury.

---

[6] Admissions may be sought even after the close of discovery. Hurt v Coyne Cylinder Co. 124 FRD 614 (W.D. Tenn. 1989) (Request for admissions is not included within parameters of general cutoff for discovery in Rule 16 scheduling order since purpose is not to discover additional information but to force opposing party to formally admit truth of certain facts).

9

THE PLAINTIFF

BY___/s/ Joanne S. Faulkner_____
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing was mailed on July 12, 2004, postage prepaid, to:

Jonathan D. Elliot
Sabatino Fiano
P. O. Box 763
Southport CT 06490

_____/s/ Joanne S. Faulkner_____
Joanne S. Faulkner

10

GOINS v. JBC                                January 27, 2004

Page 1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF CONNECTICUT

3    --------------------------------x

4    EVELINE GOINS,

5                    Plaintiff,

6        -versus-                   : Case No. 3:02CV 1069
                                       (MRK)

7

     JBC & ASSOCIATES, ET AL,

8

                    Defendants.

9

     --------------------------------x

10

11

12

13              Deposition of JACK H. BOYAJIAN, taken

14    pursuant to The Federal Rules of Civil Procedure, at the

15    offices of Sanders, Gale & Russell, 437 Orange Street,

16    New Haven, Connecticut, before Patricia Saya, LSR No.

17    37, a Registered Professional Reporter and Notary Public

18    in and for the State of Connecticut, on January 27,

19    2004, at 10:35 a.m.

20

21

22

23

24

25

SANDERS, GALE & RUSSELL                    (203) 624-4157

GOINS v. JBC                                    January 27, 2004

Page 71

1      Q.    -- is a letter dated September 23, 2002.

2      A.    Right.   It looks like a real letter that went

3   to a real person, okay.

4      Q.    Is that correct?

5      A.    I am not sure, but I assume so.

6      Q.    Under "Return charge," it says "$25"?

7      A.    Yes, but I think that that is incorrectly

8   typed, and if you look at the face of the letter, the

9   second full paragraph, it clearly states it is $20.

10     Q.    On the upper left of Exhibit B, there is a

11  number above the bar codes, which end in "CT."   Does

12  that indicate that this is one of the letters that JBC

13  uses in Connecticut?

14     A.    Yes.   It would reflect that this was the first

15  letter that goes out for a bad check writer, that the

16  transaction was in Connecticut.

17     Q.    How can you tell it was the first letter?

18     A.    Because there is a "001" in front of the "CT."

19     Q.    Plaintiff's Exhibit C is another letter also

20  dated September 23.   Is that the second letter that goes

21  into Connecticut --

22     A.    It could be.

23     Q.    -- as of September 23?

24     A.    It could be.

25     Q.    If you look down at the bottom, there is a

SANDERS, GALE & RUSSELL                      (203) 624-4157

JBC & Assoc- Denial of Consumer Collection Agency License    file:///C:/WINDOWS/Temporary%20Internet%20Files/Content.IE5/...

Case 3:03-cv-00636-JBA    Document 60    Filed 07/13/2004    Page 13 of 25



PLAINTIFF'S
EXHIBIT
Boyajian -
7/6/04

**State of Connecticut**
**Department of Banking**

March 18, 2004

VIA FIRST CLASS AND REGISTERED MAIL

Mr. Jack Boyajian, President
JBC & Associates, PC
2 Broad Street, 6th Floor
Bloomfield, NJ 07003

Re: Denial of Consumer Collection Agency License

Dear Mr. Boyajian:

Pursuant to Section 36a-801 of the Connecticut General Statutes, the application for a consumer collection agency license filed with the Consumer Credit Division ("Division") of this department on November 5, 2002 ("Application"), by JBC & Associates, PC ("Applicant") is hereby denied for the reasons set forth below. The Division has conducted an inquiry concerning the Application and the Applicant, in accordance with the requirements of Section 36a-801(b)(1) of the Connecticut General Statutes. Section 36a-801(b)(1) provides, in pertinent part, that:

> Any person desiring to act within this state as a consumer collection agency shall make a written application to the commissioner for such license in such form as the commissioner prescribes. . . . The commissioner shall cause to be made such inquiry and examination as to the qualifications of each such applicant as the commissioner deems necessary. Each applicant shall furnish satisfactory evidence to the commissioner that the applicant is a person of good moral character and is financially responsible. If the commissioner is satisfied that such applicant is in all respects properly qualified and trustworthy and that the granting of such license is not against the public interest, the commissioner may issue to such applicant a license, in such form as the commissioner may adopt, to act within this state as a consumer collection agency.

The Division's inquiry and examination of the Applicant has revealed that the Office of the Attorney General of the State of New Jersey received 126 complaints in 2003 against the Applicant from consumers. The consumers' allegations concern the Applicant's debt collection practices, failure to provide documents, billing disputes and harassment. In addition, 14 lawsuits have been filed against the Applicant, 13 in federal district courts in several states, including Connecticut, and one in state court, alleging violations of the Fair Debt Collection Practices Act and various state laws, including one lawsuit that has been certified as a class action case. Finally, it appears that the Applicant has been acting as a consumer collection agency in Connecticut without a license in violation of Section 36a-801(a) of the Connecticut General Statutes. Indeed, between December 2002 and February 2004, 9 Connecticut residents filed with the Division complaints against the Applicant alleging harassment in connection with the collection of debts and, in some cases, disputing the debts.

Based on the facts stated above, I am not satisfied that the Applicant is in all respects properly qualified and trustworthy and that the granting of such consumer collection agency

JBC & Assoc. Denial of Consumer Collection Agency License        file:///C:/WINDOWS/Temporary%20Internet%20Files/Content.IE5/...

Case 3:03-cv-00636-JBA    Document 60    Filed 07/13/2004    Page 14 of 25

license is not against the public interest.

Very truly yours,

_____/s/_____
John P. Burke
Banking Commissioner

JPB/NS/wh

Registered Mail No. RB052355565US

Administrative Orders and Settlements | Department of Banking Home Page

JBC & Assoc. Notice of Intent to Issue Order to C&D and to Impose ...     file:///C:/WINDOWS/Temporary%20Internet%20Files/Content.IE5/...

Case 3:03-cv-00636-JBA     Document 60     Filed 07/13/2004     Page 15 of 25



PLAINTIFF'S
EXHIBIT

State of Connecticut
Department of Banking

```
* * * * * * * * * * * * * * * * * * * *   *
                                          *
                                          *     NOTICE OF INTENT TO ISSUE
                                          *     ORDER TO CEASE AND DESIST
                                          *
IN THE MATTER OF:                         *     NOTICE OF INTENT TO IMPOSE
                                          *     CIVIL PENALTY
JBC & ASSOCIATES, PC                      *
                                          *              AND
       ("Respondent")                     *
                                          *     NOTICE OF RIGHT TO HEARING
* * * * * * * * * * * * * * * * * * * *   *
                                          *
```

## I. LEGAL AUTHORITY AND JURISDICTION

The Banking Commissioner ("Commissioner") is charged with the administration of Part XII of Chapter 669, Sections 36a-800 to 36a-810, inclusive, of the Connecticut General Statutes, "Consumer Collection Agencies", and the regulations promulgated thereunder (Sections 36a-809-1 to 36a-809-5, inclusive, of the Regulations of Connecticut State Agencies) ("Regulations").

Pursuant to the authority granted by Section 36a-17 of the Connecticut General Statutes, the Commissioner, through the Consumer Credit Division ("Division") of the Department of Banking, has investigated the activities of Respondent to determine if it has violated, is violating, or is about to violate, the provisions of Part XII of Chapter 669 of the Connecticut General Statutes or the Regulations. Section 36a-17(a) of the Connecticut General Statutes provides that:

> The commissioner, in the commissioner's discretion, may make such public or private investigations or examinations within or outside this state, concerning any person subject to the jurisdiction of the commissioner, as the commissioner deems necessary to carry out the duties of the commissioner.

Section 36a-52(a) of the Connecticut General Statutes provides, in pertinent part, that:

> Whenever it appears to the commissioner that any person has violated . . . any provision of the general statutes within the jurisdiction of the commissioner . . . the commissioner may send a notice to such person by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt. The notice shall be deemed received by the person on the earlier of the date of actual receipt, or seven days after mailing or sending. Any such notice shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the general statutes . . . alleged to have been violated; (4) a short and plain statement of the matters asserted; and (5) a statement indicating that such person may file a written request for a hearing on the matters asserted within fourteen days of receipt of the notice. If a hearing is requested within the time specified in the

JBC & Assoc. Notice of Intent to Issue Order to C&D and to Impose ...    file:///C:/WINDOWS/Temporary%20Internet%20Files/Content.IE5/...

Case 3:03-cv-00636-JBA    Document 60    Filed 07/13/2004    Page 16 of 25

notice, the commissioner shall hold a hearing upon the matters asserted in the notice, unless the person fails to appear at the hearing. After the hearing, the commissioner shall determine whether an order to cease and desist should be issued against the person named in the notice. If the person does not request a hearing within the time specified in the notice or fails to appear at the hearing, the commissioner shall issue an order to cease and desist against the person. No such order shall be issued except in accordance with the provisions of chapter 54.

Section 36a-50(a) of the Connecticut General Statutes, as amended by Public Act 03-259, provides, in pertinent part, that:

(1) Whenever the commissioner finds as the result of an investigation that any person has violated any provision of the general statutes within the jurisdiction of the commissioner . . . the commissioner may send a notice to such person by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt. The notice shall be deemed received by the person on the earlier of the date of actual receipt or seven days after mailing or sending. Any such notice shall include: (A) A statement of the time, place, and nature of the hearing; (B) a statement of the legal authority and jurisdiction under which the hearing is to be held; (C) a reference to the particular sections of the general statutes . . . alleged to have been violated; (D) a short and plain statement of the matters asserted; (E) the maximum penalty that may be imposed for such violation; and (F) a statement indicating that such person may file a written request for a hearing on the matters asserted within fourteen days of receipt of the notice.

(2) If a hearing is requested within the time specified in the notice, the commissioner shall hold a hearing upon the matters asserted in the notice unless such person fails to appear at the hearing. After the hearing, if the commissioner finds that the person has violated any such provision . . . the commissioner may, in the commissioner's discretion and in addition to any other remedy authorized by law, order that a civil penalty not exceeding one hundred thousand dollars per violation be imposed upon such person. If such person does not request a hearing within the time specified in the notice or fails to appear at the hearing, the commissioner may, as the facts require, order that a civil penalty not exceeding one hundred thousand dollars per violation be imposed upon such person.

(3) Each action undertaken by the commissioner under this subsection shall be in accordance with the provisions of chapter 54.

## II. MATTERS ASSERTED

1. Respondent is a California corporation with an office at 2 Broad Street, 6th Floor, Bloomfield, New Jersey.

2. On November 5, 2002, Respondent filed an application for a consumer collection agency license with the Division.

3. By letter dated January 10, 2003, the Division notified Respondent that the application was incomplete.

4. On September 9, 2003, Respondent filed some of the information requested by the Division.

5. During the period December 2002 through February 2004, the Division received nine complaints from individuals who were Connecticut residents that Respondent attempted to collect debts allegedly incurred by them. The complainants claimed that Respondent

JBC & Assoc. Notice of Intent to Issue Order to C&D and to Impose ...    file:///C:/WINDOWS/Temporary%20Internet%20Files/Content.IE5/...

Case 3:03-cv-00636-JBA    Document 60    Filed 07/13/2004    Page 17 of 25

harassed them and several of them disputed the debt.

6. In at least three of the complaints referred to in paragraph 5, Respondent attempted to collect the debts on behalf of various creditors ("Debts"). The Debts were for personal, family or household purposes.

## III. VIOLATIONS OF CONNECTICUT LAW

Section 36a-800(1) of the Connecticut General Statutes, as amended by Public Act 03-262, provides, in pertinent part, that:

> "Consumer collection agency" means any person engaged in the business of collecting or receiving for payment for others of any account, bill or other indebtedness from a consumer debtor[.]

Section 36a-800(2) of the Connecticut General Statutes as amended by Public Act 03-262, provides, in pertinent part, that:

> "Consumer debtor" means any natural person, not an organization, who has incurred indebtedness or owes a debt for personal, family or household purposes[.]

Section 36a-801(a) of the Connecticut General Statutes provides, in pertinent part, that:

> No person shall act within this state as a consumer collection agency without a consumer collection agency license. A consumer collection agency is acting within this state if it . . . (2) has its place of business located outside this state and collects from consumer debtors . . . who reside within this state for creditors who are located within this state; [or] (3) has its place of business located outside this state and regularly collects from consumer debtors . . . who reside within this state for creditors who are located outside this state[.]

1. Respondent is a consumer collection agency as defined in Section 36a-800(1) of the Connecticut General Statutes, as amended, in that Respondent is engaged in the business of collecting for payment for others an indebtedness incurred for personal, family or household purposes from natural persons, as described in paragraph 6 of the Matters Asserted.

2. Respondent's attempts to collect debts on behalf of various creditors from Connecticut residents, as described in paragraph 6 of the Matters Asserted, constitutes acting as a consumer collection agency in Connecticut under Section 36a-801 of the Connecticut General Statutes.

3. Respondent's acting as a consumer collection agency within Connecticut without a license violates Section 36a-801 of the Connecticut General Statutes and forms the basis for the issuance of an order to cease and desist pursuant to Section 36a-52(a) of the Connecticut General Statutes and an order imposing civil penalty pursuant to Section 36a-50(a) of the Connecticut General Statutes, as amended.

## IV. NOTICE OF INTENT TO ISSUE ORDER TO CEASE AND DESIST AND NOTICE OF INTENT TO IMPOSE CIVIL PENALTY

**WHEREAS**, the Commissioner has determined that Respondent has violated Section 36a-801 of the Connecticut General Statutes, which violation constitutes sufficient grounds to issue an order to cease and desist and an order imposing civil penalty for violation of Section 36a-801 of the Connecticut General Statutes.

JBC & Assoc. Notice of Intent to Issue Order to C&D and to Impose ...    file:///C:/WINDOWS/Temporary%20Internet%20Files/Content.IE5/...

Case 3:03-cv-00636-JBA    Document 60    Filed 07/13/2004    Page 18 of 25

**NOW THEREFORE,** notice is hereby given to Respondent that the Commissioner intends to issue an order requiring Respondent to **CEASE AND DESIST** from violating Section 36a-801 of the Connecticut General Statutes, which prohibits any person from acting as a consumer collection agency within Connecticut without a consumer collection agency license, and that the Commissioner intends to impose a **CIVIL PENALTY** upon Respondent not to exceed **One Hundred Thousand Dollars ($100,000)** per violation or a maximum civil penalty of **One Hundred Thousand Dollars ($100,000),** subject to its right to a hearing on the allegations set forth above.

A hearing will be granted to Respondent if a written request for a hearing is received by the Department of Banking, Legal Division, 260 Constitution Plaza, Hartford, Connecticut 06103 within fourteen (14) days following your receipt of this Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing as set forth in Section 36a-52 of the Connecticut General Statutes and Section 36a-50 of the Connecticut General Statutes, as amended. This Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing shall be deemed received on the earlier of the date of actual receipt, or seven days after mailing or sending. The enclosed Appearance and Request for Hearing Form must be completed and mailed to the above address. If Respondent will not be represented by an attorney at the hearing, please complete the Appearance and Request for Hearing Form as "pro se". If a hearing is requested, the hearing will be held on May 13, 2004, at 10 a.m., at the Department of Banking, 260 Constitution Plaza, Hartford, Connecticut.

The hearing shall be held in accordance with Chapter 54 of the Connecticut General Statutes, unless Respondent fails to appear at the requested hearing. At such hearing, Respondent will have the right to appear and present evidence, rebuttal evidence and argument on all issues of fact and law to be considered by the Commissioner. Once a written request for a hearing is received, the Commissioner shall issue a notice of hearing at least fourteen (14) days prior to a hearing in accordance with Section 4-177 of the Connecticut General Statutes and Section 36-1-17 of the Regulations.

If Respondent does not request a hearing within the time prescribed, the Commissioner will issue an order that Respondent **CEASE AND DESIST** from violating the provisions of the Connecticut General Statutes and comply with the provisions of the Connecticut General Statutes, including, without limitation, Section 36a-801 of the Connecticut General Statutes, which prohibits any person from acting as a consumer collection agency within Connecticut without a consumer collection agency license, and may order that the maximum civil penalty be imposed upon Respondent.

_____/s/_____
John P. Burke
Banking Commissioner

Dated at Hartford, Connecticut
this 18th day of March 2004.

## CERTIFICATION

I hereby certify that on this 18th day of March 2004, the foregoing Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty, and Notice of Right to Hearing was sent by registered mail, return receipt requested, to JBC & Associates, PC, 2 Broad Street, 6th Floor, Bloomfield, New Jersey 07003, registered mail no. RB052355517US.

Nirja Savill
Prosecuting Attorney

# Record of Disciplinary Action

## *July 1, 2002 - August 31, 2003*
*(Excluding auto dealer advertising violations)*

| DATE | NAME | TYPE OF ACTION |
|---|---|---|
| 07-15-02 | National Capital Funding | Cease & Desist - unlicensed collection agency |
| 07-19-02 | DEBTicated Consumer Counseling, Inc. | Cease & Desist - unregistered debt management company |
| 08-02-02 | CAMCO | Cease & Desist - unlicensed collection agency |
| 08-16-02 | PinnFund USA | Consent Agreement-revocation of license-supervised lender |
| 08-04-02 | Barwaqo | Cease & Desist - unregistered money transmitter |
| 09-10-02 | Creative Financial Solutions (Shellie Robinson) | Cease & Desist - Order of Restitution - unregistered loan broker |
| 09-18-02 | Equity Direct Mortgage Corp. | Assurance of Discontinuance; funded settlement act-supervised lender |
| 10-24-02 | EMCC Inc. | Assurance of Discontinuance - lapsed debt collector license |
| 10-30-02 | Medical Bureau of Economics, Inc. | Assurance of Discontinuance - lapsed debt collector license |
| 10-30-02 | MAXIMUS, Inc. | Assurance of Discontinuance - lapsed debt collector license |
| 11-19-02 | MAGNA Financial Group | Cease & Desist - unlicensed consumer lending |
| 12-18-02 | Bershop Brokers Ltd | Cease & Desist - unregistered loan broker |
| 12-19-02 | National Check Control | Cease & Desist - unlicensed debt collection |
| 12-30-02 | Global Financial | Cease & Desist - unregistered loan broker |
| 01-06-03 | Nationwide Business Services | Assurance of Discontinuance - unlicensed debt collection |
| 01-27-03 | Debt Management Center | Assurance of Discontinuance - unregistered debt management |
| 01-27-03 | American Debt Consolidation Group | Assurance of Discontinuance - unregistered debt management |
| 02-03-03 | National Asset Recovery Services, Inc. d/b/a LOGS Financial Services, Inc. | Assurance of Discontinuance - lapsed debt collector license |

| DATE | NAME | TYPE OF ACTION |
|---|---|---|
| 02-04-03 | Benefits Plus | Assurance of Discontinuance - unregistered loan broker |
| 02-07-03 | Debt Management Center | Assurance of Discontinuance - unregistered debt management |
| 02-25-03 | Consumer Protection Publications | Assurance of Discontinuance - unregistered loan broker |
| 03-19-03 | Express Consolidation, Inc. | Assurance of Discontinuance - unregistered debt management |
| 04-10-03 | Star Recovery & Adjustment Services | Cease & Desist - unlicensed debt collection |
| 04-10-03 | Consumer Debt Solutions a/k/a Debtrite.com | Cease & Desist - unregistered debt management |
| 04-11-03 | Universal Debt Reduction | Cease & Desist - unregistered debt management |
| 04-17-03 | Maine Capital Mortgage | Assurance of Discontinuance - Truth-in-Lending |
| 05-06-03 | Melissa Newbury d/b/a Common Sense Lending | Findings & Order - revocation of loan broker registration; restitution order; bond called |
| 05-20-03 | Colonial Mortgage and Aaron Lewis | Consent Agreement; lender's license revoked; restitution ordered |
| 06-10-03 | Genesis Financial Solutions, Inc. | Assurance of Discontinuance - lapsed debt collector license |
| 08-13-03 | JBC & Associates | Cease & Desist - unlicensed debt collection |
| 08-13-03 | Chek Systems | Cease & Desist - unlicensed debt collection |

## STATE OF MAINE OFFICE OF CONSUMER CREDIT REGULATION

Director . . . . . . . . . . . . . . . . . . . . . . . . . . . . William N. Lund
Principal Examiner . . . . . . . . . . . . . . . . . . . . . . . Del Pelton
Principal Examiner . . . . . . . . . . . . . . . . . . . Richard Howard
Principal Examiner/Research/Outreach . . . . . . David Stetson
Research/Outreach . . . . . . . . . . . . . . . . . . . . . . David Leach
Senior Examiner . . . . . . . . . . . . . . . . . . . . . . . Mary Young
Senior Examiner . . . . . . . . . . . . . . . . . . . . . Douglas Stark
Administrative Secretary . . . . . . . . . . . . . . . . Doris Whitaker
Clerk/Typist IV . . . . . . . . . . . . . . . . . . . . . . . Lorna Plaisted
Clerk/Typist II . . . . . . . . . . . . . . . . . . . . . . . Emilie Sinclair
Printed under Appropriation No. 014-02A-1030-012

PLAINTIFF'S
EXHIBIT
Drajic-S
KK    7/6/04

**STATE OF MAINE**
**KENNEBEC, SS.**

**MAINE OFFICE OF CONSUMER**
**CREDIT REGULATION**
**35 STATE HOUSE STATION**
**AUGUSTA, MAINE 04333-0035**

IN RE:    **JBC & Associates**    )    **CEASE AND DESIST ORDER**
                                   )

**WHEREAS** The Office of Consumer Credit Regulation is the agency assigned to administer Maine's Fair Debt Collection Practices Act (FDCPA), Title 32 MRSA § 11101 et seq.; and

**WHEREAS** The requirements of that Act include licensing and regulation of any collection agency which conducts business in Maine; and

**WHEREAS JBC & Associates,** a debt collector located in Bloomfield, New Jersey was notified by letter dated August 13, 2003(copy attached) that it was alleged to have been engaging in activities requiring a debt collector's license pursuant to Maine's Fair Debt Collection Practices Act, 32 Maine Revised Statutes Annotated (M.R.S.A.), Section 11001, et seq.; and

**WHEREAS** the letter alleged violations of the Fair Debt Collection Practices Act; and

**WHEREAS** follow-up letters dated September 19, 2003 and January 23, 2004 were sent requesting additional information to make a determination regarding the need for a debt collection license, and to evaluate the alleged FDCPA violations; and

**WHEREAS** no response to those requests have been received; and

**WHEREAS JBC & Associates** was sent a letter dated January 23, 2004 (copy attached) restating the need to respond; and

**WHEREAS** no response to that letter has been received; and

**WHEREAS** unlicensed collection is subject to criminal and civil penalties pursuant to 32 M.R.S.A., Section 11040 and 11054;

**NOW THEREFORE, JBC & Associates** is hereby notified and ORDERED to cease and desist collection activity with regard to residents of the State of Maine, unless and until such time as a license is issued by the Administrator.

Dated this _____2nd_____ day of __April_____, 2004

                            _____/s/ William N. Lund_____
                            William N. Lund, Director
                            Office of Consumer Credit Regulation
                            Administrator, Maine Fair Debt Collection Practices Act

**STATE OF MAINE**
**KENNEBEC, SS.**

**MAINE OFFICE OF CONSUMER**
**CREDIT REGULATION**
**35 STATE HOUSE STATION**
**AUGUSTA, MAINE 04333-0035**

IN RE:     **JBC & Associates**     )     **CEASE AND DESIST ORDER**
                                         )

**WHEREAS** The Office of Consumer Credit Regulation is the agency assigned to administer Maine's Fair Debt Collection Practices Act (FDCPA), Title 32 MRSA § 11101 et seq.; and

**WHEREAS** The requirements of that Act include licensing and regulation of any collection agency which conducts business in Maine; and

**WHEREAS JBC & Associates,** a debt collector located in Bloomfield, New Jersey was notified by letter dated August 13, 2003(copy attached) that it was alleged to have been engaging in activities requiring a debt collector's license pursuant to Maine's Fair Debt Collection Practices Act, 32 Maine Revised Statutes Annotated (M.R.S.A.), Section 11001, et seq.; and

**WHEREAS** the letter alleged violations of the Fair Debt Collection Practices Act; and

**WHEREAS** follow-up letters dated September 19, 2003 and January 23, 2004 were sent requesting additional information to make a determination regarding the need for a debt collection license, and to evaluate the alleged FDCPA violations; and

**WHEREAS** no response to those requests have been received; and

**WHEREAS JBC & Associates** was sent a letter dated January 23, 2004 (copy attached) restating the need to respond; and

**WHEREAS** no response to that letter has been received; and

**WHEREAS** unlicensed collection is subject to criminal and civil penalties pursuant to 32 M.R.S.A., Section 11040 and 11054;

**NOW THEREFORE, JBC & Associates** is hereby notified and ORDERED to cease and desist collection activity with regard to residents of the State of Maine, unless and until such time as a license is issued by the Administrator.

Dated this _____2nd_____ day of __April_____, 2004

                                _____/s/ William N. Lund_____
                                    William N. Lund, Director
                            Office of Consumer Credit Regulation
                      Administrator, Maine Fair Debt Collection Practices Act

PLAINTIFF'S
EXHIBIT
Boy ajilas ~ T
KK          7/6/04

STATE OF MINNESOTA

COUNTY OF RAMSEY

DISTRICT COURT

SECOND JUDICIAL DISTRICT

Case Type:  Other Civil
(Consumer Protection)

State of Minnesota, by its
Attorney General, Mike Hatch,

Court File No. _____

                    Plaintiff,

        vs.

JBC & Associates, P.C., a foreign professional
corporation, d/b/a JBC Legal Group, P.C.,

**COMPLAINT**

                    Defendant.

The State of Minnesota, by its Attorney General, Mike Hatch, alleges as follows:

### INTRODUCTION

1.      Defendant JBC & Associates, P.C. ("JBC") is a high volume third-party debt collector which attempts to collect alleged debts owed by Minnesota consumers.

2.      In rendering debt collection services to creditors, JBC repeatedly engages in unlawful debt collection practices.  Principally, JBC threatens to take action that cannot be taken by threatening Minnesota consumers with lawsuits that are barred by Minnesota's statute of limitations.  JBC emphasizes the threat of legal action by sending dunning letters to consumers on attorney letterhead with a facsimile signature of *"Attorneys at Law."*  Many consumers do not realize that the letters are computer generated and lack meaningful attorney involvement.  JBC's collection letters also make misrepresentations about statutory civil penalties and attorney's fees and mislead consumers as to the amount due, through contradictory service charge amounts. JBC also refuses to cease collection on disputed, unverified debts.  JBC's pattern and practice of

employing these unlawful debt collection practices also violates Minnesota consumer protection laws.

## PARTIES

3.      Mike Hatch, the Attorney General of the State of Minnesota, is authorized under Minn. Stat. Chapter 8, including Minn. Stat. §§ 8.01, 8.31, 8.32, and under Minn. Stat. 325F.70 and Minn. Stat. § 332.39, and has common law authority, including *parens patriae* authority, to bring this action on behalf of the State of Minnesota ("the State") and its citizens, to enforce Minnesota law.

4.      JBC is a California professional corporation with its principal place of business at 2 Broad Street, 6th Floor, Bloomfield, New Jersey 07003-2550.

## JURISDICTION

5.      This Court has personal jurisdiction over JBC and, pursuant to Minn. Stat. §§ 8.31, 8.32, subd. 2(a), 325D.45, 325F.70, and 332.39 (2002), jurisdiction over the subject matter of this action.

## VENUE

6.      Venue in Ramsey County is proper under Minn. Stat. § 542.09 (2002) because the cause of action arose, in part, in Ramsey County.

## COLLECTION LAWS

7.      JBC is engaged in the business of collection of accounts, bills or other debts owed by Minnesota consumers to creditors, primarily merchants.   JBC is therefore a "collection agency," as defined in Minn. Stat. § 332.31, subd. 3 (2002).

8.      As a collection agency, JBC must adhere to Minnesota's statute governing collection practices, Minn. Stat. § 332.31 *et. seq* (2002).

2

9. Minn. Stat. § 332.37(5) (2002) prohibits JBC from communicating with debtors in a misleading or deceptive manner by using the stationery of a lawyer, forms or instruments which only lawyers are authorized to prepare, or instruments which simulate the form and appearance of judicial process.

10. Minnesota's collection statute incorporates the primary federal collection statute as follows:

> No collection agency or collector shall...violate any of the provisions of the Fair Debt Collections Practices Act of 1977 [FDCPA] while attempting to collect on any account, bill or other indebtedness.

Minn. Stat. § 332.37(12) (2002).

11. The FDCPA bars JBC from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. Those unlawful collection practices include the following:

    A. The false representation of the character, amount or legal status of any debt. 15 U.S.C. § 1692e(2)(A);

    B. The false representation or implication that any individual is an attorney or that any communication is from an attorney. 15 U.S.C. § 1692e(3);

    C. The threat to take an action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5); and

    D. The use of false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692e(10).

12. The FDCPA also prohibits JBC from attempting to collect on a debt that has been disputed in writing within thirty days of JBC's initial communication, until JBC has mailed the consumer a copy of the verification of the debt. 15 U.S.C. § 1692g(b).

3

13.    The Attorney General has authority to enforce Minnesota's consumer protection laws and prohibitions against unlawful collection practices.   Minn. Stat. §§ 8.31 and 332.39 (2002).

## DEFENDANT'S ILLEGAL COLLECTION PRACTICES

14.    JBC unlawfully attempts to collect debts for its creditor-clients by intimidating Minnesota consumers with threats of legal action that cannot be taken.   JBC attempts to legitimize its threats to unsophisticated consumers by sending the letters on attorney letterhead and with a facsimile signature of *"Attorneys at Law,"* despite the lack of meaningful attorney involvement.   The computer generated form letters make misrepresentations about statutory civil penalties and attorney's fees and demand inconsistent and unauthorized amounts due.   JBC also continued collection on disputed debts without providing the necessary verification.

### *Unlawful Threats to Sue on Time-Barred Debts*

15.    JBC's website represents that it is "the last line of defense for the collection of returned checks."   This "last line of defense" does not, however, extend beyond Minnesota's statute of limitations.   Attached as **Exhibit A** is a copy of JBC's website at http://www.j-b-c.com.

16.    Minnesota has a six-year statute of limitations for civil claims on dishonored checks.

17.    JBC repeatedly threatens legal action against Minnesota consumers without regard to the statute of limitations.   JBC's initial letter threatens penalties, interest and attorney's fees "after suit has been filed."   Attached as **Exhibit B** is a copy of an initial letter sent by JBC to a Minnesota consumer.   JBC's follow-up letter threatens that it will "seek appropriate relief before a court of proper jurisdiction by a qualified attorney."   Attached as **Exhibit C** is a copy of a follow-up letter sent by JBC to a Minnesota consumer.

4