**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Eveline Goins | : |
| | : |
| v. | :     No. 3:03cv636 (JBA) |
| | : |
| JBC & Associates, P.C. | : |
| Jack H. Boyajian | : |
| Marvin Brandon | : |

**Ruling on Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment on liability for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e and § 1692f.  For the reasons discussed below, plaintiff's motion is granted in part.

**I.  Background**[1]

Plaintiff Eveline Goins ("Goins") is a consumer within the meaning of the FDCPA, who allegedly owes a debt that is the subject of collection efforts.  See 15 U.S.C. § 1692a(3). Defendant JBC & Associates, P.C. ("JBC") is a law firm located in New Jersey, owned by defendant Jack H. Boyajian, an attorney licensed to practice in California, and employing defendant Marvan Brandon, an attorney licensed to practice in New Jersey. Boyajian describes his occupation as "an attorney at law that

---

[1]Defendants move to strike several documents submitted by plaintiff in support of her summary judgment motion, including those that reference other lawsuits, JBC's website, JBC's licensing application, a 1998 letter, and a West Virginia subpoena.  Because the Court has not relied on these documents in reaching its decision, defendant's motion to strike [Doc. # 53] is DENIED as moot.

provides services to clients who have debts that are with consumers that I am engaged in recovering for." Deposition of Jack H. Boyjian, Jan. 27, 2004 [Doc. # 38] at 25:7-9. Although defendants are not licensed as a consumer collection agency in Connecticut, they have sent letters to Connecticut residents, identifying themselves as attorneys at law, seeking collection of debts.

In September 1997, JBC received a claim by Wilson Suede & Leather for two returned checks written by plaintiff in the amounts of $243.79 and $158.99. Goins filed suit against defendants under the FDCPA in June 2002 challenging their collection activity related to the debt allegedly owed to Wilson Suede & Leather. See Goins v. JBC & Associates, P.C., et al., Civ. No. 3:02cv1069 (MRK). Goins commenced a second FDCPA action against Brandon in August 2002, which also was related to the collection of the Wilson Suede & Leather debt. See Goins v. Brandon, Civ. No. 3:02cv1537 (AVC). In April 2002, plaintiff filed for bankruptcy, defendants were made aware of the bankruptcy filing, and JBC put a hold on further communications with Goins. See Declaration of Jack H. Boyajian [Doc. # 49] at ¶ 5.

Despite the hold on her account, on February 17, 2003, JBC sent Goins another letter demanding payment of the debt allegedly owed to Wilson Suede & Leather. The text of the February 17, 2003 letter that JBC sent to Goins states:

2

```
Re:                 Wilson Suede & Leather
File#:              562183
Driver's License:   212895428
Balance:            $10277.56
```

Dear Eveline J Goins:

You have obviously chosen to ignore our previous communication demanding that you make restitution on an NSF check(s) written to our above-referenced client(s).  Our client(s) may now assume that you delivered the check(s) with intent to defraud, and may proceed with the allowable remedies.

Since you have not tendered payment for the full amount of the check(s) and service charge(s) within the 30 days provided, pursuant to Connecticut General Statutes Section 52-565a, you may be subject to statutory penalties as determined by the court, but in no event shall be greater than the face value of the check or $400.00, whichever is less, for a total amount of $10277.56.

You may wish to settle this matter before we seek appropriate relief before a court of proper jurisdiction by a qualified attorney by contacting **Lori Brown at 800-241-1510**.  If you qualify, you may also be able to use your American Express, Discover, Mastercard or Visa credit card to meet this obligation.

Very truly yours,
**JBC & Associates, P.C.**
**Attorneys at law**

This is an attempt to collect a debt by a debt collector. Any information will be used for that purpose.

## II.  Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In moving

3

for summary judgment against a party who will bear the burden of
proof at trial, the movant's burden of establishing that there is
no genuine issue of material fact in dispute will be satisfied if
he or she can point to an absence of evidence to support an
essential element of the non-moving party's claim. See Celotex
Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("The moving party
is 'entitled to a judgment as a matter of law' because the
nonmoving party has failed to make a sufficient showing on an
essential element of her case with respect to which she has the
burden of proof."). In order to defeat summary judgment, the
non-moving party must come forward with evidence that would be
sufficient to support a jury verdict in his or her favor.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("There
is no issue for trial unless there is sufficient evidence
favoring the nonmoving party for a jury to return a verdict for
that party.").

When deciding a motion for summary judgment, "'the
inferences to be drawn from the underlying facts . . . must be
viewed in the light most favorable to the party opposing the
motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 587-588 (1986) (quoting United States v. Diebold, Inc.,
369 U.S. 654, 655 (1962)). However, "[w]hen a motion for summary
judgment is made and supported as provided in [the Federal
Rules], an adverse party may not rest upon the mere allegations
or denials of the adverse party's pleading." Fed. R. Civ. P.

4

56(e).  Instead, the party opposing summary judgment must set forth the specific facts in affidavit or other permissible evidentiary form that demonstrate a genuine issue for trial.  See id.

### III.  Discussion

Plaintiff argues that the February 17, 2003 collection letter sent by defendants to plaintiff violates the FDCPA because (1) defendants were not licensed to collect as required by Connecticut law; (2) defendants knew plaintiff was represented by counsel; (3) the letter demanded considerably more than any possible amount of the alleged debt; and (4) the letter threatened to sue on a time-barred debt.

In opposing plaintiff's summary judgment motion, defendants make three arguments.  First, they argue that this FDCPA suit, the third that Goins has brought against them, violates the rule against splitting causes of action, because they all arise from the same collection effort that JBC undertook.  Second, they assert that the February 17, 2003 letter resulted from "a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c).  Finally, they claim that Brandon and Boyajian were not debt collectors in the transaction at issue in this case.

#### A.  Duplicative Litigation

It is well-established that "a district court may stay or

dismiss a suit that is duplicative of another federal court suit" in the exercise of its discretion, "as part of its general power to administer its docket." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000). The determination of whether a suit is duplicative is informed by the doctrine of claim preclusion. "[T]he true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." Id. (quoting United States v. The Haytian Republic, 154 U.S. 118 (1894)). Thus, a suit is duplicative, and claims would be precluded, where "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit." Id. at 139 (citation omitted); see also Maharaj v. BankAmerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) (claim preclusion applies when a second suit "involves the same 'transaction' or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first.").

Claim preclusion, however, "does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit. . . . The plaintiff has no continuing obligation to file amendments to the complaint to stay

abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims." Curtis, 226 F.3d at 139 (citing SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1464 (2d Cir. 1996)).  The instant suit is based on a single letter sent by JBC to plaintiff in February 2003, after the two earlier lawsuits had been commenced.  Even if the letter were part of the same debt collection activity that defendants had been engaged in and which was the subject of plaintiff's prior suits, the February 17, 2003 letter constitutes a separate event which may violate the FDCPA independently of prior communications from defendants.  Because the facts underlying this suit arose subsequent to the filing of plaintiffs' previous complaint and are distinct from the facts underlying the previous suit, this action is not duplicative.

Defendants argue that by bringing three separate actions, plaintiff may obtain more damages than if she had brought a single action based on all claimed violations.  The FDCPA provides that statutory damages "in the case of any action by an individual" shall not "exceed[ ] $1,000," 15 U.S.C. § 1692k(a)(2)(A), and based on this language at least two circuits have held that the FDCPA limits additional damages beyond the actual damages sustained by a plaintiff to $1,000 per action, not per violation.  See Harper v. Better Business Services, Inc., 961 F.2d 1561, 1563 (11th Cir. 1992) (holding that additional damages were limited to $1,000 per action because "[t]he FDCPA does not

7

on its face authorize additional statutory damages of $1,000 per violation of the statute, of $1,000 per improper communication, or of $1,000 per alleged debt. If Congress had intended such limitations, it could have used that terminology."); Wright v. Finance Service of Norwalk, Inc., 22 F.3d 647, 651 (6th Cir. 1994) ("Congress intended to limit "other damages" to $1,000 per proceeding, not to $1,000 per violation.").  There is no prohibition in the FDCPA against separate lawsuits for separate statutory violations of the FDCPA by the same defendant.  Where, as here, the subsequent action is not duplicative and would not be barred under the claim preclusion doctrine, plaintiff may avail herself of the serendipity of an additional FDCPA violation by the same defendant subsequent to initiation of a prior lawsuit and thereby avoid a per action damages limitation, as is undoubtedly plaintiff's strategy here.

**B.  Individual Defendants**

Defendants also argue that Goins has failed to demonstrate that Brandon and Boyajian acted as debt collectors, because the February 17, 2003 letter at issue here is from "JBC & Associates" and is not signed by either of the individual defendants.  In an affidavit submitted in opposition to summary judgment, Brandon states that he "did not draft the letter, nor did I cause it to be printed or mailed," and that he "had no personal involvement in any effort to collect moneys from the plaintiff relating to

8

the letter in question or at or about the time of the letter in question." Affidavit of Marv Brandon [Doc. # 50] at ¶¶ 3-4.[2] In reply, plaintiff notes that the February 17 letter refers to "our previous communication," "[o]ur client(s)," and threatens that "we" may seek appropriate relief in court. The use of the first person plural, plaintiff argues, refers to both individual defendants. Plaintiff also argues that because Brandon signed prior letters to plaintiff and acknowledged acting as a debt collector with regard to the prior communications with plaintiff, the February 17 letter's reference to "our previous communication" clearly implicates Brandon. Plaintiff's evidence and inferences therefrom squarely conflict with Brandon's affidavit that he had nothing to do with preparing or sending the letter in question. As a result, there exists a genuine issue of material fact on whether Brandon was part of the plural "we" involved in the debt collection effort at issue in this case, and

_____

[2]Plaintiff moves to strike paragraph 3 of Brandon's affidavit "to the extent he contradicts earlier sworn statements and is estopped by his judicial admissions that he is a debt collector." Memorandum in Support of Plaintiff's Motion to Strike Declarations [Doc. # 59] at 2. Plaintiff points to defendants' Answer and response to interrogatories in related cases, Goins v. Brandon, Civ. No. 3:02cv1537 (AVC) and Goins v. JBC et al., Civ. No. 3:02cv1069 (MRK), in which Brandon is acknowledged to be a debt collector involved in reviewing or drafting the form of letters sent in conjunction with the collection of plaintiff's debt. Because these admissions do not necessarily apply to Brandon's conduct with respect to the February 17, 2003 letter at issue in this case, it remains proper to consider Brandon's affidavit on summary judgment. Compare Butty v. General Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995).

summary judgment in plaintiff's favor against defendant Brandon
is inappropriate.

Boyajian, however, undisputedly acted as a debt collector in
this case. He is the owner of JBC, has acknowledged that in that
capacity he "provides services to clients who have debts that are
with consumers that I am engaged in recovering for," Deposition
of Jack H. Boyajian, Jan. 27, 2004 [Doc. # 38] at 25, and has
acknowledged in deposition testimony that he has sole control
over which debt collection letters are sent to consumers:

> Q.   If a letter went to Ms. Goins, you yourself would
>      decide which letter should go to her?
> A.   We use several different techniques to decide – I use
>      several different techniques to decide which letters go
>      to whom. . .
> . . .
> Q.   Are your collectors allowed to generate or decide what
>      letters go out?
> A.   No.
> Q.   Who other than you decides what letters go out?
> A.   No one.
> . . .
> A.   I think you are asking me, did I draft a letter,
>      because the variables are what they are with respect to
>      each named debtor, right? Are you asking me did I
>      formulate the letters as to what fields should go in
>      there? Right?
> Q.   Okay.
> A.   The answer is yes. I have been involved. To most of
>      the degree, I make the final decision on what letters
>      are sent out and what they contain.

Boyajian Deposition Transcript [Doc. # 38] at 37, 39-40.

While defendants' Local Rule 56(a)(2) Statement denies that
Boyajian is a debt collector, and cites generally to Boyajian's
Declaration as evidentiary support, the declaration itself does
not state that Boyajian is not a debt collector or was not

10

involved in preparing or sending out the February 17, 2003 letter at issue in this case. <u>See</u> Declaration of Jack H. Boyajian [Doc. # 49]. The Court therefore finds that Boyajian was engaged in debt collection activity in this case, and was a debt collector within the meaning of the FDCPA for purposes of this case. <u>See</u> 15 U.S.C. § 1692a(6) (defining debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.").

**C. Merits**

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692 includes a non-exhaustive list of conduct that violates the statute, including "(2) [t]he false representation of--(A) the character, amount, or legal status of any debt;" and "(5) [t]he threat to take any action that cannot legally be taken or that is not intended to be taken." §§ 1692e(2)(A), 1692e(5). "[A]n objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector, is applied" in determining whether a violation of the FDCPA has occurred. <u>Russell v. Equifax</u>, 74 F.3d 30, 34 (2d Cir. 1996). "The basic purpose of the least-

11

sophisticated-consumer standard is to ensure that the FDCPA
protects all consumers, the gullible as well as the shrewd."
<u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (2d Cir. 1993).  "This
least-sophisticated-consumer standard best effectuates the Act's
purpose of limiting the 'suffering and anguish' often inflicted
by independent debt collectors."  <u>Id</u>.

### 1.  Amount of the Debt

Plaintiff first argues that defendants falsely represented
the amount of the debt plaintiff owed in the February 17, 2003
letter, in violation of 15 U.S.C. § 1692e(2)(A) (prohibiting
"[t]he false representation of--(A) the character, amount, or
legal status of any debt"); and 15 U.S.C. § 1692f(1) (prohibiting
"[t]he collection of any amount (including any interest, fee,
charge, or expense incidental to the principal obligation) unless
such amount is expressly authorized by the agreement creating the
debt or permitted by law.").  The February 17, 2003 letter stated
that the "balance" was $10,277.56 and implied that Goins was
liable that amount in "restitution" based on "an NSF check(s)
written to our above-referenced client," Wilson Suede & Leather.
Defendants have acknowledged, however, that the debt owed to
Wilson Suede & Leather was based on two checks written by the
plaintiff during January 1996, totaling $402.78.  <u>See</u> Response to
Plaintiffs' Interrogatories [Doc. # 38] (listing dishonored
checks written by plaintiff referred to JBC for collection,

including the two January 1996 checks totaling $402.78 from client "WSU"). Defendants now state that the $10277.56 figure was based on 22 dishonored checks that Goins made out to various merchants, totaling $4851.28, plus a check charge of $25.00 for each check, plus damages equal to the face amount of each check, which were the maximum available statutory damages JBC could obtain in a civil lawsuit under Conn. Gen. Stat. § 52-565a(c).

The amount JBC demanded in its February 17, 2003 letter is grossly misleading. First, the February 17 letter specified only a debt owed to Wilson Suede & Leather, and nowhere informs plaintiff that the claim is also based on debts owed to other merchants. Moreover, the letter claims an amount representing not only the actual debt owed, but the maximum obtainable statutory damages that could be awarded against plaintiff in a civil action. This is impermissible, because "[t]he 'amount of debt' provision is designed to inform the debtor . . . of what the *obligation* is, not what the final, worst-case scenario *could* be." Veach v. Sheeks, 316 F.3d 690, 693 (7th Cir. 2003) (emphasis in original). While the letter obliquely informs plaintiff that the $10277.56 amount includes potential statutory damages "as determined by the court," supra at 2-3, not actual debt owed, it demands a "balance" of $10,277.56 in bold print at the top of the letter, which under the least sophisticated consumer standard reasonably implies that $10,277.56 is the

13

amount of plaintiff's debt.  Finally, although defendants have
now justified the $10,277.56 fee by including a $25.00 check
charge on each of the 22 dishonored checks claimed, defendants
did not disclose the $25.00 check charge to Goins in the February
17 letter.  Accordingly, the undisputed evidence shows that the
February 17 letter falsely represents the amount of debt owed.

## 2. License

JBC was not licensed in Connecticut as a consumer collection
agency at the time defendants sent the February 17, 2003 debt
collection notice to plaintiff, and their application for a
license has since been denied.  See Letter from John P. Burke,
Banking Commissioner, State of Connecticut, to Jack Boyajian,
Mar. 18, 2004, [Doc. # 60] (denying application for consumer
collection agency license that JBC had filed on November 5,
2002).[3]  Although the February 17, 2003 letter does not claim
that JBC is licensed in Connecticut, plaintiff argues that
defendants' unlicensed attempt to collect a debt from plaintiff,
violates 15 U.S.C. § 1692e(5) (barring any "action that cannot
legally be taken"); § 1692e(9) (prohibiting misrepresentation of

---

[3]The plaintiff submitted with her reply brief additional
documentary support of her claim, including the March 18 denial
letter from the Connecticut Department of Banking.  Although
submitted in reply, the Court finds it appropriate to consider
this evidence, as defendants have not disputed that they were
unlicensed, cannot claim surprise at the Department of Banking
letter, which was directed to defendants in response to their
application, and have not sought leave to respond to the
evidence.  See Bayway Refining Co. v. Oxygenated Marketing and
Trading A.G., 215 F.3d 219, 227 (2d Cir. 2000).

document's state authorization or approval); and § 1692f
(prohibiting the use of "unfair or unconscionable means to
collect or attempt to collect any debt."). <u>See also</u> <u>Clomon v.
Jackson</u>, 988 F.2d 1314, 1320 (2d Cir. 1993) ("[T]he use of any
false, deceptive, or misleading representation in a collection
letter violates § 1692e regardless of whether the representation
in question violates a particular subsection of that provision.")

Connecticut requires consumer collection agencies acting
within the state to be licensed.  <u>See</u> Conn. Gen. Stat. § 36a-
801(a) ("No person shall act within this state as a consumer
collection agency without a consumer collection agency
license."),[4] and prohibits a collection agency from, among other

_____

[4]A license is required under Connecticut law if the
collection agency "(2) has its place of business located outside
this state and collects from consumer debtors who reside within
this state for creditors who are located within this state; or
(3) has its place of business located outside this state and
regularly collects from consumer debtors who reside within this
state for creditors who are located outside this state."  Conn.
Gen. Stat. § 36a-801(a).  Here, there is no dispute that Goins is
a Connecticut resident, and that JBC is a firm located outside of
the state.  While defendants argue in their opposition to
plaintiff's motion for partial summary judgment that plaintiff
has not provided any evidentiary support showing where JBC's
client-creditors are located, and that it remains disputed
whether JBC "regularly collects" from Connecticut consumers, the
Court finds that plaintiff's unchallenged evidence establishes
JBC's need for a Connecticut license. Defendants have
acknowledged in their responses to plaintiffs' interrogatories
that they used form letters aimed at Connecticut debtors from
2001 to the present.  <u>See</u> [Doc. # 38]; <u>see also</u> Deposition
Transcript of Jack Boyajian, Jan. 27, 2004 [Doc. # 60] at 71
(explaining bar codes on form letters that reflect "that the
transaction was in Connecticut").  Further, the State of
Connecticut Department of Banking's March 18, 2004 letter denying
JBC a license notes that "it appears that [JBC] has been acting

things, "institut[ing] judicial proceedings on behalf of others." Conn. Gen. Stat. § 36a-805(a)(1).  Considering these provisions in Gaetano v. Payco of Wisconsin, Inc., 774 F.Supp. 1404 (D. Conn. 1990), the district court held that a debt collection agency that was unlicensed by the state of Connecticut, which demanded payment of the debt and stated that it would use all means to enforce collection, "violated § 1692e(5) of the FDCPA by threatening to take action that legally could not be taken."  Id. at 1415.  Gaetano has been followed by several other district courts.  See, e.g. Sibley v. Firstcollect, Inc., 913 F.Supp. 469, 471 (M.D. La.1995) (finding violation of § 1692e(5) when unlicensed debt collector attempted to collect a debt from consumer); Russey v. Rankin, 911 F.Supp. 1449, 1459 (D. N.M. 1995); Kuhn v. Account Control Technology, Inc., 865 F.Supp. 1443, 1451-52 (D. Nev. 1994).

Not all courts have adopted a categorical rule that an FDCPA violation occurs whenever an unlicensed debt collector sends out any debt collection notice, and instead some have looked to the content of the notice.  Most notably, in Wade v. Regional Credit Association, 87 F.3d 1098 (9th Cir. 1996), the Ninth Circuit

as a consumer collection agency in Connecticut without a license in violation of Section 36a-801(a) of the Connecticut General States.  Indeed, between December 2002 and February 2004, 9 Connecticut residents filed with the Division complaints against [JBC] alleging harassment in connection with the collection of debts and, in some cases, disputing the debts."  Letter from John P. Burke, Banking Commissioner to Jack Boyajian, Mar. 18, 2004 [Doc. # 60, Ex. P].

found that the defendant's unlicensed debt collection activity
was not a "threat to take action that could not legally be taken"
in violation of FDCPA § 1692e(5).  The single debt collection
agency notice to the plaintiff stated:

> WHY HAVEN'T WE HEARD FROM YOU?  OUR RECORDS STILL SHOW THIS
> AMOUNT OWING.
> If not paid TODAY, it may STOP YOU FROM OBTAINING credit
> TOMORROW.  PROTECT YOUR CREDIT REPUTATION.  SEND PAYMENT
> TODAY.
> . . .
> DO NOT DISREGARD THIS NOTICE.  YOUR CREDIT MAY BE ADVERSELY
> AFFECTED.

Wade, 87 F.3d at 1099.

The notice also stated: "This has been sent to you by a
collection agency and is an attempt to collect a debt and any
information obtained will be used for that purpose."  Id.  The
Court of Appeals concluded that "body of the notice was
informational, notifying Wade that failure to pay could adversely
affect her credit reputation.  There was no threat to sue.  The
least sophisticated debtor would construe the notice as a
prudential reminder, not as a threat to take action."  Id. at
1100.  The court also found that the language to the effect that
the notice was an attempt to collect a debt was required by the
FDCPA, and was "also informational," not threatening.  Because
the notice could not be characterized as threatening to take
specific action, the court found no FDCPA violation.  Similarly,
in Ferguson v. Credit Management Control, Inc., 140 F. Supp. 2d
1293, 1302 (M.D. Fla. 2001), the district court determined no

violation of § 1692e(5) had occurred where the debt collection agency "did not hold itself out as a licensed debt collector in Florida. It did not threaten to take legal action if plaintiff did not respond to the notice. Moreover, the only language that Ferguson argues is 'threatening' is required to be in the notice by the FDCPA."

Here, in contrast to Wade and Ferguson, the debt collection notice contained an unequivocal threat to take action, stating, "[y]ou may wish to settle this matter before we seek appropriate relief before a court of proper jurisdiction by a qualified attorney." See February 17, 2003 letter [Doc. # 36] (emphasis added). The letter also refers to "our" prior "communication demanding . . . that you make restitution," states that JBC's clients "may now assume that you delivered the check(s) with intent to defraud," and refers to "statutory penalties as determined by the court." The letter's references to statutes, attorneys, court, settlement, and restitution, augmented by its aggressive, accusatory tone (e.g. "You have obviously chosen to ignore our previous communication"), bolster its syntax as a threat to sue the plaintiff on the debt. In sum, the letter is far from Wade's "prudential reminder" to pay an outstanding debt. On the undisputed facts of this case, the Court concludes that the letter violates the FDCPA's prohibition of threats to take action that cannot legally be taken. See 15 U.S.C. § 1692e(5).

18

### 3.  Improper Threat of Litigation

Plaintiff further argues that JBC's threat to "seek
appropriate relief before a court of proper jurisdiction"
violated the FDCPA because a suit on the January 1996 NSF checks
was time-barred by the applicable six-year statute of limitations
at the time the February 2003 letter was written.  Although a
debt collector may seek to collect on a time-barred debt, that
debt collector may not threaten litigation where such suit would
be improper.  Cf. Freyermuth v. Credit Bureau Serv. Inc., 248
F.3d 767 (8th Cir. 2001) ("[I]n the absence of a threat of
litigation or actual litigation, no violation of the FDCPA has
occurred when a debt collector attempts to collect on a
potentially time-barred debt that is otherwise valid.").

As discussed above, the February 17 letter at issue here
unambiguously threatened litigation.  Defendants respond by
arguing only that the statute of limitations did not bar them
from pursuing litigation against Goins because the statute of
limitations is not a jurisdictional bar, but merely an
affirmative defense that can be waived.  As the statute of
limitations would be a complete defense to any suit, however, the
threat to bring suit under such circumstances can at best be
described as a "misleading" representation, in violation of §
1692e.  As an officer of the court, Boyajian has an obligation to
represent to the court to the best of his knowledge, "after an

19

inquiry reasonable under the circumstances," that the claims
presented are "warranted by existing law or by a nonfrivolous
argument for the extension, modification, or reversal of existing
law or the establishment of new law." See Fed. R. Civ. P. 11; see
also State v. Turner, 267 Conn. 414, 430 (2004) (defining
frivolous action as one in which "the lawyer is unable either to
make a good faith argument on the merits of the action taken or
to support the action taken by a good faith argument for an
extension, modification or reversal of existing law."). 
Sanctions therefore would be appropriate if an attorney knowingly
filed suit on an undisputedly time-barred claim.  See Steinle v.
Warren, 765 F.2d 95 (7th Cir. 1985) (awarding attorneys fees to
opposing party and imposing Rule 11 sanctions where attorney knew
claim was time-barred).  That the statute of limitations is an
affirmative defense does not relieve defendants of their
professional responsibility, when they do not dispute the
applicability or viability of the defense.  Because defendants
were not entitled to sue in such circumstances, the threats to
sue in the February 17 letter are improper. See Kimber v. Federal
Financial Corp., 668 F. Supp. 1480 (M.D. Ala. 1987) (finding
FDCPA violation where attorney threatened to sue on a time-barred
claim).

**4.  Communication with Consumer Known to be Represented by Counsel**

Finally, plaintiff argues that defendants improperly

20

communicated directly with her, having received formal notification that she was represented by counsel because she had filed a lawsuit against defendants for their collection efforts in 2002.  Under 15 U.S.C. § 1692c(a)(2), a debt collector "may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."  As the Federal Trade Commission commentary on this provision explains, "[i]f a debt collector learns that a consumer is represented by an attorney in connection with the debt, even if not formally notified of this fact, the debt collector must contact only the attorney and must not contact the debtor."  Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50104 (1988).

Goins' 2002 lawsuit concerned debt collection activity regarding a $402.78 debt owed to Wilson Suede and Leather, a debt which also formed a partial basis for the amount claimed in the February 17, 2003 letter.  See Response to Plaintiffs' Interrogatories [Doc. # 38]; Goins v. JBC & Associates, P.C., et al., Civ. No. 3:02cv1069 (MRK), 2004 WL 2063562 (D. Conn. Sept.

21

3, 2004).  As defendants do not dispute that the 2002 lawsuit gave them sufficient notice that plaintiff was represented by counsel with respect to the debt on which they sought to collect through the February 17, 2003 letter, or that the February 17, 2003 letter was sent directly to plaintiff, they are liable under § 1692c(a)(2).

**D.  Bona Fide Error Defense**

Defendants defend their actions in this case primarily by arguing that the February 17, 2003 letter was the result of an unintentional error.  In support, defendants state that when JBC learned of Goins' bankruptcy, a hold was placed on her account pursuant to JBC's regular procedures for debtors in bankruptcy or who are represented by counsel.  In a Declaration dated May 27, 2004, Boyajian states that "JBC has standardized procedures in place to avoid further communications with the consumer when JBC learns that the consumer is represented by counsel or has filed for bankruptcy protection.  Upon receipt of notice of such representation or filing, codes reflecting such representation or filing are entered into the consumer's file, notifying collectors or attorneys working the file that such representation or filing has taken place.  The collectors and/or attorneys are trained and informed that under such circumstances, further communication with the consumer is prohibited.  No further collection efforts were to occur as to Ms. Goins master account."  Declaration of

22

Jack H. Boyajian, May 27, 2004 [Doc. # 49] at ¶ 5.  Boyajian states that the February 17, 2003 letter was "triggered by a later, separate placement by a JBC client of additional bad checks written by Ms. Goins.  This new placement resulted in the creation of a separate new master account number.  Due to an imperfection in the computer program or an inadvertent creation of a merged account, the computer issued a letter which included information, not only about the newly placed checks, but swept in information concerning the prior placements as well."  Id. at ¶ 7.

Section 1692k(c) provides that a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.  However, a debt collector may escape liability if it can demonstrate by a preponderance of the evidence that its violation [of the Act] [satisfies the requirements of 1692k(c)]."  Russell v. Equifax, 74 F.3d 30, 33-34 (2d Cir. 1996).

Defendants have not met their burden here.  Although Boyajian's declaration establishes that hold procedures were in effect at JBC the time the February 17, 2003 letter was sent, and

that JBC received claims for new debts plaintiff owed subsequent
to placing a hold on her account, the undisputed fact remains
that the February 17 letter (1) sought to collect against a
debtor known to have a bankruptcy proceeding pending, and (2)
incorporated the earlier debts on which plaintiff was known to be
represented by counsel.  Thus defendants have not demonstrated
the existence of hold procedures which were operative, and cannot
ascribe their error as occurring despite maintenance of
procedures to avoid it.  As Boyajian acknowledges, the computer
system did not simply create a new account for Goins based on the
new claims, it merged old information from her "master" account.
The letter selected to be sent, moreover, referred to "prior
communications" that had gone unanswered.  And like the previous
communications, the February 17, 2003 letter sought to collect on
the debt owed to Wilson Suede & Leather.  Thus, far from being
excused as generated in response to a new claim, the letter
referred to a preexisting debt, the attempted collection of which
was the subject of two lawsuits against defendants in which
plaintiff was represented by counsel.  Boyajian offers no
explanation about how the procedures were reasonably adapted to
avoid merging "held" accounts, or how the selection of a form
letter referring to "prior communications" could reflect
"maintenance of procedures reasonably adapted to avoid"
processing "held" accounts.  Indeed, defendants make no claim
that the content of the letter was a bona fide error.  The Court

24

therefore concludes that defendants cannot prevail as a matter of law on their bona fide error defense.[5]

**E.  CUPTA Claim**

Plaintiff also seeks summary judgment on her claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b.  Section 42-110b(a) prohibits persons from engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  To bring an action under CUTPA, however, plaintiff must demonstrate that she has "suffer[ed] any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b." Conn. Gen. Stat. § 42-110g(a).  Defendants oppose plaintiff's CUTPA claim on grounds that she cannot satisfy CUTPA's requirement of demonstrating "ascertainable loss."

"The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." <u>Hinchliffe v. American Motors Corp</u>., 184 Conn. 607, 615 (1981).  The "ascertainable loss" requirement does not require that a plaintiff prove a specific amount of actual damages.  As the

---

[5]Plaintiff moves to strike various parts of Boyajian's declaration, arguing that the statements are conclusory or do not state admissible facts.  As the Court has concluded that defendants cannot prevail on their bona fide error defense, plaintiffs' motion to strike [Doc. # 59] is DENIED as moot.

Connecticut Supreme Court has explained, "'[a]scertainable' means 'capable of being discovered, observed, or established,'" while "'[l]oss' has been held synonymous with deprivation, detriment and injury. It is a generic and relative term." Id. at 613 (citations omitted). Thus, "[w]henever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." Id. at 614. Moreover, "[u]nder CUPTA, there is no need to allege or prove the amount of the ascertainable loss." Id. CUPTA specifically permits equitable relief, and thus "expressly contemplates plaintiffs' judgments which do not include an award of money damages." Id. at 618. These comprehensive remedies [are] intended "to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts." Id.

Under this framework, the Connecticut Supreme Court has found an ascertainable loss where plaintiffs purchased a vehicle that had been advertised as a "full-time four-wheel drive" vehicle, but was in fact "something less desirable than a full-time four wheel drive," Hinchliffe, 184 Conn. at 619, even though plaintiffs were not able to attach a particular dollar amount to their injury from defendant's deception. The Connecticut Supreme Court has also found ascertainable loss where there was evidence that the defendants' use of surveillance cameras pointed at

26

plaintiffs' exotic dance clubs "caused prospective patrons to refrain from entering plaintiffs' establishments," despite a lack of evidence of lost profits. <u>Service Road Corp. v. Quinn</u>, 241 Conn. 630, 640-41 (1997). In <u>A. Secondino and Son, Inc v. LoRicco</u>, 215 Conn. 336 (1990), however, the defendant's CUTPA counterclaim failed because although he demonstrated that the contractor's failure to provide a written contract containing notice of the right to cancel violated the Home Solicitation Sales Act, an unfair trade practice under CUTPA, he "fail[ed] to present any evidence concerning the nature and extent of the injury sustained." <u>Id</u>. at 344. Similarly, in <u>Rizzo Pool Co. v. Del Grosso</u>, 232 Conn. 666 (1995), the ascertainable loss requirement was not met where there was no injury shown to result from defendant's "misrepresentations regarding the effect of the water level of the pond on the price of the swimming pool," and plaintiffs did not claim to have "suffered an ascertainable loss under CUTPA by virtue of the fact that the plaintiff's failure to install the swimming pool deprived them of the benefit of their bargain." <u>Id</u>. at 684-85 & n.30 (citation omitted).

Plaintiff has not shown her entitlement to summary judgment on this count, because, as in <u>A. Secondino</u> and <u>Rizzo</u>, she has not provided any basis for a finding that she was ascertainably injured as a result of defendant's February 17, 2003 letter. At best, she has demonstrated a potential injury, resulting from defendants' attempt to collect from her an amount far exceeding

the actual obligation owed.  Plaintiff, however, has not
identified and the Court has not found any authority supporting
the position that threatened rather than actual "deprivation,
detriment or injury" satisfies the "ascertainable loss"
requirement.  As construed by the Connecticut Supreme Court and
as the plain meaning of the phrase implies, "ascertainable loss"
refers to some injury that has occurred, and is therefore
"measurable." Hinchliffe, 184 Conn. at 614.

It is possible to speculate that a letter of the kind sent
to plaintiff could cause injury in a variety of ways.  A consumer
may respond to the letter by actually paying an amount far
greater than what is actually owed, or may incur other expenses
in challenging the debt collection effort.  The debt collection
practice may unfairly damage the consumer's credit rating, or may
cause the consumer emotional distress.  The threshold of showing
a measurable loss is not great.  Plaintiff, however, has not set
forth any evidence demonstrating a loss of any kind.[6]
Accordingly, summary judgment on plaintiff's CUTPA claim is

---

[6]In her memorandum in support of her motion for partial
summary judgment, plaintiff states that she "has ascertainable
loss when she got a letter that violated state and federal laws,"
but offers no explanation of how receipt of such a letter caused
a measurable loss.  Plaintiff also argues in her memorandum of
law that "[h]er monetary loss, to be ascertainable, may be as
little as a 33¢ stamp, a toll call, or gas or parking to visit an
attorney." Plaintiff's Memorandum in Support of Partial Summary
Judgment [Doc. # 37] at 15.  Plaintiff has presented no evidence
that she experienced any of these losses, however.  The affidavit
that she submitted in support of her motion is silent on the
issue of injury or loss.

denied.

## IV.  Conclusion

For the foregoing reasons, plaintiff's Motion for Partial Summary Judgment [Doc. # 35] is GRANTED in part as to plaintiffs' FDCPA claims against defendants JBC & Associates, P.C. and Jack H. Boyajian.  Plaintiff's motion is DENIED as to plaintiffs' CUTPA claim and her FDCPA claims against defendant Marvin Brandon.  Defendants' Motion to Strike [Doc. # 53] is DENIED as moot.  Plaintiff's Motion to Strike Portions of Boyajian and Brandon Declarations [Doc. # 58] is DENIED.

IT IS SO ORDERED.

/s/

_____
_____Janet Bond Arterton, U.S.D.J.


**Dated at New Haven, Connecticut, this 14th day of January, 2004.**